THE STATE v. HAYES, *Appellant.*

1. **Practice in Supreme Court:** LOST INSTRUCTION. The Supreme Court will not reverse a judgment because a refused instruction asked on behalf of the defendant is lost or mislaid, and, therefore, omitted from the transcript, it appearing that the other instructions given in the cause, and contained in the transcript, fully covered the law of the case.

2. **Practice, Criminal:** MATTERS OF EXCEPTION. The action of the trial court in overruling challenges of jurors, and improper remarks of counsel, are matters of exception, and can be preserved only in the bill of exceptions.

3. **St. Louis Criminal Court:** CHANGES OF VENUE: STATUTE. Section 19, page 1509 of the Revised Statutes of 1879, relating to applications to a judge of the circuit court of St. Louis in the matter of changes of venue from the St. Louis Criminal Court, and to the mode of procuring such changes of venue, was repealed by section 1877 of Revised Statutes of 1879, and applications for changes of venue from said St. Louis criminal court are now governed by the general law of the State. Overruling *State v. Kring,* 74 Mo. 612, HENRY, J.. dissenting.

4. **Constitution of the United States:** EQUAL PROTECTION OF THE LAWS. A law authorizing changes of venue generally throughout the State, but exempting the city of St. Louis from its benefits, would be repugnant to section 1 of the fourteenth amendment to the constitution of the United States, which forbids a state to deny to any person the equal protection of the laws, and the result would be the same, whether such law be passed in the first instance, or whether the deprivation of the same right elsewhere enjoyed and recognized is occasioned by subsequent legislation.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*James J. McBride* and *C. C. Simmons* for appellant.

The transcript shows that at the close of the evidence defendant asked an instruction, which was refused by the court, and that the defendant at the time duly excepted, but the instruction does not appear in the record, the clerk certifying that it is either lost or mislaid. The appellant is entitled to a review of the case upon a correct record. The trial court erred in denying defendant's proper challenges of jurors for cause. He was entitled to a full panel of qualified jurors before he could be compelled to make his peremptory challenges. *State v. McCarron*, 51 Mo. 27; *State v. Steeley*, 65 Mo, 218; *State v. Degonia*, 67 Mo. 485. The judge of the St. Louis criminal court was disqualified to sit in the cause until the matter raised in the affidavits supporting the application for change of venue had been passed on by some competent tribunal. R. S., § 1877. He was legally disqualified to try said cause. The order calling in Judge Burton was legal under Revised Statutes, section 1877, which repealed all acts inconsistent therewith. *State v. Kring*, 74 Mo. 612; *State v. Houser*, 28 Mo. 233. Judge Burton having assumed jurisdiction of the cause, had sole charge of it, and he alone could make the vacating order. R. S., § 1881; *State v. Daniels*, 66 Mo. 192; *State v. Hopper*, 71 Mo. 425. The order vacating Judge Burton's appointment without notice to defendant was void. *State v. Webb*, 74 Mo. 333. The circuit court's denial of the application for change of venue, did not confer jurisdiction upon Judge Laughlin. Section 19 of the act concerning the St. Louis criminal court, is repugnant to the provisions of the constitution of the United States, article 14, section 1, for it denies to the citizens of St. Louis city charged with crime, the equal protection of the law with other citizens of the State. Said section 19 of the act creating the criminal court of St. Louis, is also repugnant to section 22 of article 2 of the constitution of Missouri, which guarantees in all

criminal prosecutions a speedy and public trial by an impartial jury of the county.

*D. H. McIntyre*, Attorney General, for the State.

The action of the court in overruling defendant's challenges of jurors was not properly excepted to. *Harrison v. Bartlett*, 51 Mo. 170. The order appointing Judge Burton having been made under a void statute, (*State v. Kring*, 74 Mo. 612,) Judge Burton acquired no jurisdiction, and Judge Laughlin lost none. The application for change of venue on account of the prejudice of the inhabitants of St. Louis, was properly made to the circuit court. *State v. Kring*, 74 Mo. 612, 627. The trial court did not err in overruling the application for a panel of jurors from St. Louis county. *State ex rel. v. Laughlin*, 75 Mo. 147. The instructions given by the court covered the whole case, hence the question raised by defendant as to the lost or mislaid instruction, is immaterial. *State v. Jefferson*, 77 Mo. 137

SHERWOOD, J.—The defendant was indicted for murder in the first degree and, on trial had, was convicted of that offence, and there was abundant testimony to support the conviction. He now appeals to this court.

The instructions given covered every phase of the case arising on the facts adduced in the evidence, and left nothing to be desired. This deprives the case of resemblance to *Reid's case*, 67 Mo. 36; for even had the instruction, asked by defendant and refused by the court, been preserved in the bill of exceptions, its refusal would not have authorized a reversal, other instructions fully covering the case having been given. This being true, it must be entirely immaterial whether the instruction was lost or whether preserved.

Regarding the challenging of two of the jurors for cause, there is no such point preserved in the bill of exceptions, the only proper repository for such matters, and, indeed, of all similar matters which rest in, and are based on excep-

tions. The affidavits respecting such challenges cannot, therefore, be noticed. And the like line of remark applies to the supposed unjustifiable utterances by the counsel of the State, when addressing the jury. After so many adjudications on this point, as to the proper method for preserving matters of mere exception, it seems strange that counsel should resort to any other mode than that so frequently pointed out by a long line of adjudication.

The next points for determination present more difficulty and necessitate a discussion of certain statutes of a general character, and others which are local in their nature and operation, relating to changes of venue in criminal causes, and determining whether, in the present case, the former or the latter, should control. At the January term, 1882, the defendant filed his application for a change of venue, based upon the prejudice of the inhabitants of the eighth judicial circuit. This application was supported by the affidavit of the defendant as well as by the affidavits of two other persons, and also by the additional affidavit of the defendant that the judge of the criminal court would not impartially decide defendant's application because of the prejudice of the inhabitants of the eighth judicial circuit. This application was in entire conformity to the provisions of section 1877, R. S., 1879, and resulted in the Hon. Charles G. Burton, judge of the twenty-fifth judicial circuit, being requested by the order of the criminal court to hear the petition for a change of venue and to try the cause. Judge Burton accordingly came and sat in the cause January 30th, 1882, and as the record recites " enters upon the discharge of his duties in respect to hearing said application for change of venue and the trial of this cause; thereupon the hearing of said application for a change of venue and the trial of this cause is by consent of both the circuit attorney and the defendant laid over to Wednesday, February 8th, 1882." On the 2nd day of February, 1882, the opinion of this court in the case of the *State v. Kring*, 74 Mo. 612, having been promulged, Judge Laughlin, the

37—81

judge of the criminal court, believing himself to be acting in conformity with that opinion, and that the opinion therein decides, as it does, that applications for changes of venue on account of the prejudice of the inhabitants of the city of St. Louis must be made to some judge of the circuit court of that city, set aside the order aforesaid, on the ground that there was no authority to make it. Judge Burton thereafter took no further steps in the cause, but Judge Laughlin thereafter took full control of the cause and to this action of Judge Laughlin, the defendant excepted. On the 8th of February, 1882, to which time the cause had been adjourned by Judge Burton, the defendant filed his verified petition in the circuit court of the city of St. Louis for a change of venue, based upon the prejudice of the inhabitants of that city. The circuit court, after hearing testimony in the cause, denied the prayer of the petition. Thereafter, on the 3rd of April, 1882, the defendant made application, verified by his affidavit, to the criminal court, praying for a jury from the county of St. Louis, alleging in his application the prejudice of the inhabitants of the city. This application, being also denied and the defendant excepting, he was put upon his trial in the criminal court, before Judge Laughlin, with the result already announced.

These preliminaries being stated, these questions arise: As to the effect of the application for a change of venue made before the judge of the criminal court; his calling in Judge Burton to sit in the cause; the assumption by the latter of jurisdiction in the cause; the subsequent vacation by the judge of the criminal court of the order requesting Judge Burton to sit; the resumption by the judge of the criminal court of jurisdiction and control of the cause; the legality of the application for a change of venue made before the circuit court, based upon the prejudice of the inhabitants of the city of St. Louis, and the validity of the application made to the criminal court for a jury from the county.

Section 1877, before referred to, provides that "when any indictment    *    *    shall be pending in any circuit or criminal court, the judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases:   1st.   When the judge of the court in which such case is pending is near of kin to the defendant by blood or marriage; or, second, when the offence charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him; or third, when the judge is in anywise interested or prejudiced, or shall have been counsel in the cause; or fourth, when the defendant shall make and file an affidavit, supported by the affidavit of at least two reputable persons, not of kin or counsel for the defendant, that the judge of the court in which said cause is pending will not afford him a fair trial or will not impartially decide his application for a change of venue on account of the prejudice of the inhabitants of the county or circuit."

It will be observed that this section applies indiscriminately to all courts exercising criminal jurisdiction.   It will be further observed that the fourth sub-division of the section disqualifies the regular judge of the court to hear and try the cause upon filing the affidavit which that subdivision requires equally as much as when he is of kin, interested or prejudiced.   And from the very nature of the case, a judge of whom it is sworn that he will not impartially decide an application for a change of venue, is incompetent to sit to try such an issue; otherwise he adjudicates upon the question of his own impartiality.   And, indeed, it has passed into precedent that the section under discussion imperatively requires the election of a special judge in the first instance, where such an affidavit is made as contemplated in that section.   *State v. Greenwade*, 72 Mo. 298.   In that case it was also, ruled that it was proper to call in the judge of another circuit to pass upon an application for a change of venue, based upon the prejudice of the inhabitants, when accompanied by an affidavit based on the

fourth sub-division of the section aforesaid. And in *Kring's case* it was held that an application based upon the prejudice of the judge of the criminal court was properly presented to the judge of that court, and that the judge of that court in proper circumstances was fully authorizd to call upon the judge of another circuit to sit in the case when satisfied that no competent person would be elected as a special judge.   The judge of the criminal court being thus rendered incompetent to sit in the case at bar, he lost his jurisdiction when the order requesting Judge Burton had been complied with, and the latter had entered upon the discharge of his duties.   This view should accomplish the reversal of the judgment, and is bottomed on the ground that all proceedings had before Judge Laughlin, after Judge Burton has assumed jurisdiction, were *coram non judice.*

It is but a necessary corollary from the foregoing, that judge Burton still retains the jurisdiction with which he was clothed by the order of the criminal court.   Section 1881, R. S., 1879, provides that where the judge of another circuit is called in " he shall, during said trial, and in relation to said cause possess all the powers and perform all the duties of a circuit judge at a regular term of said court, and may adjourn the case from day to day or to some other time, as the exigencies of the case may require." Section 1879, R. S., makes similar provisions in respect to a special judge, and this court has ruled, in a case not yet reported, that a special judge, when once invested with powers as such, retains them until the termination of the cause.

It now remains to discuss whether the application for a change of venue, on account of the prejudice of the inhabitants of the circuit was properly presented to the circuit court.   It would seem to follow, that, if the ruling in *Greenwade's case* be correct, and if section 1877 means just what it says in reference to " any indictment      *
*      pending in any circuit or criminal court," and if the order calling on Judge Burton to sit in the cause was valid, as

already determined, that the application for a change of venue
based on the prejudice of the inhabitants should have been
made to him, just as it would certainly have been thus made
had the cause arisen outside of the city of St. Louis, and he
had been called to sit.   This must be true or else it must be
true that Judge Burton was properly called in to hear an
application for a change of venue, which he was powerless
to pass upon when presented.   I am unable to discover any
substantial reason why the same legal effects and conse-
quences should not follow from calling in a judge from
another circuit to sit in the criminal court of St. Louis as
would undoubtedly follow were such a judge called upon
to preside in a criminal cause in any other quarter, or
court of this state.

In *Kring's case* a ruling contrary to this view was
made, and as I now conceive that ruling incorrect, I desire
to examine the foundations upon which that ruling is sup-
posed to rest.   Prior to the act of 1877, which, according
to the ruling in *State ex rel Harris v. Laughlin,* 75 Mo. 147,
made the city of St. Louis the eighth judicial circuit, and
placed the county of St. Louis, together with other coun-
ties, in the nineteenth judicial circuit, the city and county
of St. Louis constituted the eighth judicial circuit, and
were governed by certain peculiar local laws, which, while
they differed from the general laws pertaining to changes of
venue, whether because of the disabilities of the judge or
the prejudice of the people, gave the applicant for a change
of venue an equivalent, which was supposed to fully secure
to him a fair and impartial trial, as much so as those
methods of procedure authorized by the general law, which
prevailed in other portions of this state.   The provisions
of the local law referred to, first appeared in the act of
February, 1849, and transferred causes where the judge of
the criminal court was incompetent to sit to the common
pleas court, and forbade a change of venue to any other
county on account of the prejudice of the inhabitants of
either city or county, but provided a venire should issue to

the city or county in accordance as prejudice might be shown to exist in either.

After the common pleas court was abolished these provisions were transferred to the circuit court, and with immaterial changes, so far as concerns the present investigation, are to be found in sections 16, 17 and 18, R. S., 1879, pages 1508 and 1509. Section 19 on the latter page never constituted a part of the act creating or organizing the criminal court. In the revisions of neither 1855 nor 1865 is that section treated as forming part of the law pertaining to the organization of the criminal court, but it seems to have been improvidently inserted in the revision of 1879, under the impression that it properly belonged to that assemblage of local laws, pertaining to the city of St. Louis, entitled the criminal court. In the case of the *State ex rel Harris v. Laughlin*, it was ruled that section 18, cited above, which corresponds with section 3 of the act of 1849, and provided for a venire, as occasion might demand, from either the city or county of St. Louis, where prejudice of the inhabitants existed, was abrogated by the act of 1877, dividing the state into judicial circuits and constituting the city of St. Louis the eighth judicial circuit. This law and this ruling cut off all opportunity for a person indicted in the criminal court of St. Louis from having any venire which should obtain for him, as was formerly provided, an impartial jury from a locality unaffected by prejudice against him. In *Kring's case* it was ruled that section 16, *supra*, which forbade changes of venue on account of the prejudice or other disability of the judge of the criminal court, and provided for the transfer of such causes for trial to the circuit court, was repealed by section 1877, *supra*, and section 1878 next thereafter, because totally repugnant to those sections of the criminal code. And it was well said in that case that "to give those sections full force in their application to all courts having criminal jurisdiction would be impossible, if the application for a change of venue on the ground of incompetency of the judge had to

be made to the judge of the circuit court." But, it was not observed in that case that the observation just quoted would apply with equal force and sigificance to the fourth subdivision of section 1877, *supra,* which evidently relates, as to one of its clauses, to an affidavit supplemental to an ordinary application for a change of venue based upon the prejudice of the inhabitants of the county, or circuit, as provided for in sections 1856, 1857, 1858 and 1859 of the same chapter. In a word, no greater repugnancy could exist between some portions of sections 1877 and the local law, than between other portions of the same section and that same local law; therefore for like reasons, section 19 aforesaid must be regarded as also annulled by the general and repugnant provisions of the criminal code, even should that section be regarded as forming any portion of the law relating to the organization of the criminal court. That section, in express terms, provided that there shall be no change of venue from the criminal court except as therein provided, and then made provision that for any of the causes for which changes of venue are now allowed by law a party might present to the circuit court of St. Louis his application for a change of venue, based upon any one of the causes allowed by law for such a change, etc., whereupon it should be the duty of the circuit court, upon hearing testimony, to either grant the application, and order the cause transferred to that court, or, on being satisfied that the alleged cause did not exist, to dismiss the application at the cost of the applicant. In *Kring's case,* it was also decided that so much of section 19, just cited, as required application for changes of venue, on account of the incompetency of the judge of the criminal court, to be made to the circuit court, was repealed by reason of repugnancy to the provisions of the criminal code, as aforesaid; but at the same time it was also ruled in that case that so much of that section as required applications for changes of venue from the criminal court to be made to the circuit court, on account of the prejudice of the inhab-

itants, was retained, and that the jurisdiction of that court on that point remained as it was, prior to the enactment of the criminal code.

This ruling, for the reasons heretofore given, I regard as erroneous, and will proceed to give some additional reasons therefor; reasons touching questions of statutory and constitutional construction. But before proceeding to state these reasons, it may be said that while section 18 of the act organizing the criminal court remained in force, no necessity existed for applying to the circuit court for a change of venue based on the prejudice of the inhabitants, whether of county or city, because a venire issued to either city or county, as emergency demanded, would have accomplished all that could have been done, and more than could have been done by a change of venue, or rather transfer of the cause to the circuit court; and it would be most unreasonable to suppose that the legislature would require a party to go to the circuit court for a change of venue based upon the prejudice of the inhabitants, when the only remedy which at that time could have been granted him in that regard, was only obtainable by a venire under the provisions of section 18. But a more serious objection still occurs to the ruling mentioned, as to section 19; it is this: Since the ruling in the *State ex rel. Harris v. Laughlin,* before cited, declaring section 18 aforesaid abolished, a ruling which, in justice to the learned judge who delivered the opinion of the court in *Kring's case,* it is scarcely necessary to say, was not then anticipated, the application to the judge of the circuit court for a change of venue, because of the prejudice of the inhabitants, would be utterly barren of results, even if successful, resulting only in a change of forum, a compulsory change of judges instead of a change of venue, and leaving the cause to be tried by a jury from the very locality where the prejudice complained of, is ascertained and declared by the solemn judgment of the circuit court to exist. Could any child's game of cross-purposes be more ludicrous? The idea is not to be tolerated

for a moment that the legislature intended any such farcically absurd result. For "it is not to be presumed that the legislature intended, that the results of its deliberate act should prove of no effect, or in other words, a nullity. Hence another rule of construction is, that no statute should be so construed as to produce such an effect." Smith's Com., § 488. By an absurdity or nullity is meant not only that which is physically impossible, but also that which is morally so, and that is to be regarded as morally impossible, which is contrary to reason, or in other words, which could not be attributed to a man in his right senses. *Ib.*, §§ 486, 518.

Taking this view of the matter, it should be held that by reason of the ruling in *State ex rel. Harris v. Laughlin*, and the enactment of 1877, *supra*, which abrogated section 18, and by reason of the general provisions of the criminal code being repugnant to section 19 aforesaid, the whole of that section must be regarded as repealed and abrogated, leaving no shred or patch of jurisdiction vested in the circuit court, and leaving the rights of a defendant in a criminal cause, when indicted in the city of St. Louis, to be governed by the provisions of the general law in relation to changes of venue. And in respect to section 1999, it may be said that it may refer to some future legislative enactments, (*Ex parte Allen*, 67 Mo. 534;) it does not necessarily refer to section 19, and "continue in force the jurisdiction of the circuit court on applications for changes of venue made on account of the prejudice of the inhabitants," and if it should be held to do this because of making an exception as to those courts exercising criminal jurisdiction when an "other or different provision is made by law," then for the very same reason, and by the same method of construction, section 16 of the local law, relating to the criminal court of St. Louis, and indeed all the provisions of that local law, except section 18, should be held as still intact and in full force, notwithstanding the totally repugnant provisions of section 1877, relied on in *Kring's case.*

Any other conclusion which holds that the portion of section 19, before mentioned, is still in force, would cause such portion to be violative of section 1 of the fourteenth amendment of the constitution of the United States, which forbids that any state "deny to any person the equal protection of the laws." Doubtless the legislature might repeal all the provisions of the general law relating to changes of venue in criminal causes, and there would be no redress. But no one would claim that the legislature could pass a law for changes of venue in such causes which should be general throughout the state, with a proviso that none of its benefits should be enjoyed by the citizens of St. Louis, and the effect is precisely the same whether such a law be passed in the first instance, or whether by subsequent legislation, the same deprivation of the right elsewhere enjoyed and recognized occurred. It is needless to urge upon those who have long been engaged in criminal trials the insidious nature of popular prejudice, especially in closely congregated communities, nor to urge upon them the importance of the right and of the protection which secures exemption from such a danger. Against the bias of the judge the law affords many protections. His bias may measurably be neutralized by properly conducting the cause before him; his rulings may be reviewed and corrected in an appellate court: but who can be able to withstand popular prejudice, or who defend his client against its baleful influence? Impalpable as the air we breathe, yet deadly as the malaria of the Pontine marshes, it penetrates with its poisonous exhalations the innermost recesses of the jury room.

To guard, as far as possible, against an evil of such magnitude, laws allowing changes of venue have been passed, and this state has fully recognized the danger from such a source, and so far as human agencies may operate through general laws, made provision against it. Under that clause of the amendment referred to, the state has no authority to recognize such a right, provide for its protec-

tion and its exercise all over its boundaries, and yet refuse to provide any means for its exercise in one isolated and excepted locality.    Under the construction I have given to the different statutory provisions no such infraction of the constitution will occur.

For the reason that Judge Laughlin had no jurisdiction to try the defendant, the judgment should be reversed and the cause remanded.    Judges Norton and Ray concur; Hough, C. J., concurs in the result, and Henry J., dissents.

HENRY, J., Dissenting.—Not concurring in the views expressed in the foregoing opinion, by which a case is overruled recently decided by this court, in which all the judges concurred, I feel it due from me, in view of that fact and of the important questions involved, to state the grounds of my dissent.

In the act establishing the criminal court of St. Louis, and in all the legislation on the subject, the purpose of the legislature to deny to persons accused of crime in that city a change of venue is too clear for controversy.    In section 18 of the act establishing the St. Louis criminal court, it is declared that:  "It shall not be lawful for a person indicted in the city of St. Louis to obtain a change of venue to any other county."    In section 19 it is declared that, " No change of venue shall hereafter be allowed from the St. Louis criminal court, except as herein provided."    But it is strenuously contended that the provisions of that act have been repealed by those of the general statutes; and the section chiefly relied upon in support of that view is 1877, which declares that in any criminal cause, pending in any circuit or criminal court, if the defendant make an affidavit that the judge before whom it is pending will not grant him a fair trial, or decide impartially his application for a change of venue, based upon the prejudice of the inhabitants, such judge shall be incompentent to hear or try said cause.    The argument is that this latter clause of the section, in connection with the first, is a recognition of the

right of the accused to make his application for a change of venue to the criminal court and not to the circuit court as provided in the act establishing the criminal court of St. Louis, and that it operates as a repeal of those sections of the act establishing that court which relate to changes of venue. It is to be borne in mind, in construing that section, that applications for changes of venue in this state, elsewhere than in St. Louis, when this section was created, were made to the courts in which indictments were pending and the latter clause of the section was added in order that the accused might have an impartial decision of his application for a change of venue based upon the prejudice of the inhabitants, but so far as the criminal court of St. Louis was concerned the law had already provided that applications for change of venue, based upon that ground, should be made, not to the judge of the criminal court, but to the circuit court. It strengthens the view that it was not intended to repeal that law, that while section 1856 provides for a change of venue in any criminal cause pending in the circuit court to another county, and section 1999 applies all the provisions of the criminal code applicable in terms to the circuit court to all courts of record having criminal jurisdiction, it expressly excepts those courts for whose government a different provision of law was then in force. In the latter clause of section 1877 criminal courts were named, because there were other criminal courts in the state to which the special provisions of the act establishing the St. Louis crimimal court were not applicable, and in which applications for changes of venue for any of the causes enumerated in the statute were made to those courts instead of the circuit court.

It is much clearer from the exceptions in section 1999, that there was no purpose to repeal the provisions of the act establishing the criminal court of St. Louis than that from the phraseology of section 1877 it was the intent to repeal them. It does not repeal them in terms, no no-

tice of that act is taken in section 1877. If repealed, it is, by implication, against an express provision which seems to have been adopted for the purpose of preserving the mode of procedure in the St. Louis criminal court, an implication against the declared policy of refusing changes of venue in the city of St. Louis, which has been repeatedly declared since the organization of the criminal court of St. Louis. But that the legislature did not, by any section of the criminal code, intend to repeal so much of the act establishing the criminal court of St. Louis as relates to changes of venue, is made clear by section 3158, which expressly declares that " all acts and parts of acts especially applicable to the city of St. Louis, and in force at the commencement of, or passed during the present session of the general assembly and not repealed by some act of the present session, shall be and the same are continued in force, according to their respective provisions and limitations, and shall be published as an appendix to the Revised Statutes."

This court held in the *Kring case*, all the judges concurring, that applications for changes of venue, on the ground of the prejudice of the inhabitants, should be made to the circuit court, and I am entirely satisfied that if any error was committed by this court in that adjudication it was in holding that the judge of the criminal court may call another judge when the accused applies for a change of venue on account of his disqualification. But without going over that ground again, being fully satisfied with the conclusions reached in the *Kring case*, we come now to the question of the unconstitutionality of the act, denying the right to a change of venue in the city of St. Louis, while, by the general law, to every one accused of crime elsewhere in the state, it is granted. The act denying the right is not unconstitutional, because it only denies, in the territory to which it applies, a right which no one accused of crime has in this State, except by law. The constitution does not guarantee it. It declares that he shall have a speedy public trial by an impartial jury of the county. Awarding a

change of venue is a matter of grace and favor and not of constitutional right, and if either the law denying it in St. Louis or the general law conferring the right elsewhere in the State be unconstitutional, it must be the latter, and if so, the result is, not that the accused in St. Louis shall have a change of venue, but that no one indicted can have it, anywhere in the State. In other words, if the general law has no application to St. Louis, this court cannot extend it over that territory on the assumption that the legislation, denying the right to a change of venue in St. Louis is unconstitutional. If the general law had been applicable throughout the State, and a law had been enacted repealing it, so far as it extended to the city of St. Louis, the constitutional question would be properly before us, but if the general law in the revision of 1879, is not applicable to the city of St. Louis, one indicted in the city can have no change of venue, whether the general law, because not applicable to that city, is constitutional or not.

It is conceded, in the opinion of the majority of the court that the legislature may, in the city of St. Louis, substitute the right to a jury from the county, for the change of venue provided for the balance of the State. It seems to me, with due respect for my associates, that this is yielding the entire ground of their argument.

The right to a change of venue is not predicated upon the idea that an impartial jury cannot be obtained from a prejudiced community, but upon the ground that such prejudice will prevent a fair trial, even by an impartial jury, sitting in the midst of such community. Under our decisions it is not difficult, at least not impossible, to get an impartial jury, or a jury competent to try the cause, no matter how great the prejudice of the inhabitants of the county. The substantial value of a change of venue lies in the fact that it removes the trial from such surroundings as would likely unduly influence a jury, impartial when selected. Under the special provisions relating to the criminal court of St. Louis, the accused in that city had

the option to get a jury from the county or have a change of the forum, in lieu of a change of venue. This court, in an opinion from which I dissented, in the case of the *State ex rel. v. Laughlin*, struck down the former right, and left only the barren, fruitless right of a change of forum, and for this court to extend the general law over the city of St. Louis, on account of the anomalous condition of the law in relation to changes of venue, produced by judicial adjudications and faulty legislation on the subject, were to legislate and not judicial determine.

If the legislature intended the general law on the subject to apply to the city of St. Louis, then the controversy is at an end. If it did not so intend, it is not the province of this court to extend the general law over that territory.

I am of the opinion that Judge Laughlin properly construed the *Kring case*, and do not agree to reverse the judgment on the ground that the court erred in rescinding the order calling Judge Burton to preside at the trial of Hayes.