THE STATE v. MOBERLY, *Appellant.*

Division Two, May 8, 1894.

1. **Criminal Practice:** SPECIAL JUDGE: JURISDICTION. Where a special judge is called in at the request of the regular judge, and for a time presides in a criminal case, he acquires jurisdiction which can not be divested by any subsequent action of the regular judge.

2. ———: EVIDENCE. Evidence of separate and independent crimes is inadmissible on a trial for a felonious assault.

3. ———: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. Where one who was the principal witness for the state in a prosecution for a felonious assault on one W., and who testified that he and the defendant conspired to kill and rob W., makes an affidavit in support of a motion for a new trial, that his testimony was false and that he was hired by W. to so testify, a new trial should be granted on the ground of newly discovered evidence.

*Appeal from Buchanan Circuit Court.*—HON. SILAS WOODSON, Judge.

REVERSED AND REMANDED.

The indictment in this cause charges that Luther Moberly, Joseph Howard and Dena Elliott, on the

twenty-fourth of April, 1891, made a felonious assault on Emmett C. Wells, by shooting him with a shotgun. A severance being granted defendant, he was put upon his trial and a mistrial was the result; this was in 1891. Again in 1892 he was tried and convicted as charged, his punishment being assessed at two years in the penitentiary—hence this appeal.

The testimony shows that during 1891, E. C. Wells was a merchant at Rushville, in Buchanan county, Missouri, engaged in a general merchandise business, and that his residence was about one hundred and fifty yards from his storeroom; that Luther Moberly, Dena Elliott, Joseph Howard and John Barrigar were young men, who also resided at Rushville. Elliott was the ward and nephew of Wells, who, as his guardian, had about $2,000 in his possession belonging to Elliott; that Elliott was continually making application to Wells for money; that Wells refused to give him money, except such as was necessary for his sustenance and schooling. During the afternoon of April 24, Moberly, Elliott and Howard were in Rushville, and were seen together. On the night of the twenty-fourth, just before Wells closed his store to start home, Elliott came into the store where Wells was counting the money and preparing to leave, took a water bucket and went to a public well near by to get water, returning in a few moments with a bucket of water.

About the time of Elliott's return to the store, Wells left, going out the back way where he would pass his stable on his way to his house, taking with him, in his overcoat pocket, between $200 and $300 in money. This had been his custom and his practice, and was well known to the defendant and his associates. When Wells had gotten to the barn, he was shot in the right side of the head and body and seriously wounded.

From the shot picked from his head and body it was evident that it was a charge of number 6 shot, and that a shotgun had been used. After the shot was fired, a man was seen running from the stable into and down the alley. The night was clear, with bright moonlight, but Dr. Morrison, by whose place a man supposed to be the assassin ran, would not undertake to say who it was. It was also shown from a track leading down the alley that the assassin and Luther Moberly wore the same size shoes. Some time after the shot was fired, and when several persons had gathered at the store of Wells, Moberly appeared upon the scene with a double-barreled shotgun, one barrel of which was empty, the other containing a loaded shell; the persons present were talking about securing some arms and attempting to find the perpetrator of this crime, when Moberly offered the loan of the gun. It is shown that he borrowed the gun shortly before the shooting, that he stated then, and at the time that he brought it to the store of Wells, after the shooting of Wells, that he had been out in a pasture hunting dogs.

Soon after the shooting all of the parties were arrested. Elliott made a full confession or statement, in which he said that a conspiracy had been arranged and entered into by Moberly, Howard and himself to kill and rob Wells. Two of the state's witnesses, Mollie Conrad and Nellie Allison, testified that on one evening prior to the shooting, Dena Elliott was at their house visiting, when Barrigar came there to see Elliott, when they went outside and stood whispering together; that Elliott wrote, or pretended to write, a note or order on Wells, which order Barrigar took with him; that night Elliott told these women of the conspiracy to rob Wells' store; but, though Wells was their uncle, they never gave him any hint or warning of the plot to rob him. It is also shown that Moberly called at the post-

office for mail addressed to some fictitious person; that he received a postal card written in cipher. The defendant Moberly testified denying any connection with the crime, and attempted to establish the presence of a stranger who was seen leaving the town that night after the shooting, carrying a valise and a shotgun.

The record in this case covers hundreds of type-written pages; the bill of exceptions *is not indexed*; the above extracts, however, will suffice for the present purpose.

*W. K. Amick* for appellant.

(1) The court erred in not sustaining the defendant's motion for new trial on the ground of newly discovered evidence. The testimony of Dena Elliott was newly discovered, it was not cumulative, it was competent and material. It tends to prove absolutely that the defendant had nothing whatever to do in the commission of the crime and no doubt would have changed the verdict of the jury. The court in passing on this point overruled it on the ground that in his opinion the testimony of Dena Elliott would not be believed by the jury. This power to determine what effect the evidence would have upon the jury at another trial is beyond the discretion of the court. It was solely the province of the jury to determine what weight and credit should be given to it. It should have been submitted to the jury for their consideration. The court had no right to deprive the defendant of the benefit of this testimony. *State v. Wheeler*, 94 Mo. 253; *State v. Bailey*, 94 Mo. 315; *State v. Murray*, 91 Mo. 103; *State v. Curtis*, 77 Mo. 267; 1 Graham & Waterman on New Trials, 172; 3 Graham & Waterman on New Trials, 1053–1057. (2) The court committed error in admitting the testimony of Mollie Conrad and Nellie Allison,

regarding the declarations of Dena Elliott made one week before the crime, in which Elliott said that John Barrigar, Luther Moberly and Joseph Howard were going to rob Wells' store on that night. These declarations referred to another crime and were inadmissible. *State v. Daubert*, 42 Mo. 242. (3) The court should not have refused instruction number 10 asked by defendant. Instructions numbers 11 and 14 should also have been given. *State v. Daubert*, 42 Mo. 242. (4) Instructions numbers 12 and 15 should also have been given. *State v. Walker*, 98 Mo. 103; *State v. Daubert*, 42 Mo. 239; *State v. Belcher*, 125 Ind. 419; *State v. Walls*, 125 Ind. 400, 419; Whart. Crim. Law [8 Ed.], sec. 1401, and notes; 1 Greenleaf on Evid., sec 111. (5) The court should have given instruction number 19. There was no evidence of any conspiracy, in which defendant was a party, to commit the crime charged in the indictment. 8 Crim. Law Mag., 823; Desty's Am. Crim. Law, 11a; 2 Whart. Crim. Law [7 Ed.], sec. 1314a; 63 N. Y. 88-92; 90 Ill. 384.

*R. F. Walker*, Attorney General, for the state.

(1) The evidence supports the conviction, and the verdict ought not to be disturbed. *State v. Banks*, 23 S. W. Rep. (Mo.) 1079. (2) The state's instructions correctly declare the law. (3) A new trial ought not to be awarded on the ground of newly discovered evidence. *State v. Wilson*, 21 S. W. Rep. (Mo.) 443. (4) The indictment follows the language of the statute (R. S. 1879, sec. 3489) and is sufficient.

SHERWOOD, J.—I. At the March term, 1892, of the Buchanan criminal court, as the record recites "on account of the sickness of Judge Woodson's family, by

agreement of parties in writing, Judge Henry M. Ramey is selected as special judge to try this cause. It is therefore ordered that the cause be tried by Judge Henry M. Ramey." On the next day, as the record shows, Judge Ramey sat in the cause and granted an application for a continuance presented by the state. At the next June term, the record recites that Judge Ramey tried this cause, showing that on several days during which the cause progressed, he sat on the bench. The bill of exceptions, however, purports to be signed by Judge Woodson. But the counsel for the respective parties have by stipulation agreed that the cause was tried before Judge Woodson. But the stipulation filed does not controvert that Judge Ramey was called in to try the cause and did preside therein, as already related. This record recital must, therefore, be regarded as showing that Judge Ramey sat in the cause on the request of Judge Woodson, for such is what the record purports. Section 29, art. 6, Const.; R. S. 1889, sec. 4178; *State v. Gonce,* 87 Mo. *loc. cit.* 634; R. S. 1889, secs. 3322, 3323. This being the case, Judge Ramey acquired jurisdiction to try the cause, of which he could not be divested by the subsequent action of Judge Woodson, and that jurisdiction thus created, under our repeated rulings, continued until the final determination of the cause. *State v. Hayes,* 81 Mo. 574; s. c., 88 Mo. 344; *State v. Sneed,* 91 Mo. 552; *State v. Davidson,* 69 Mo. 509. This view should accomplish the reversal of the judgment.

. II. But that judgment must be reversed on other grounds: Evidence was admitted to show many things wholly foreign to the present prosecution. For instance, the testimony as to what Mollie Conrad told about a conversation between Dena Elliott and Barrigar to rob his uncle's store. This was long before

VOL. 121—39

the shooting, and the plan it seems had been abandoned, and never carried out.    Evidence of such independent and disconnected crimes was, of course, inadmissible. *State v. Parker*, 96 Mo. 382, and cases cited; *State v. Daubert*, 42 Mo. 242.

The same line of remark is applicable about the burning of a store building at Huron in Kansas, where Wash Wells, a brother of Emmett Wells, was residing; Wash Wells being accused of the arson, and defendant being subpoenaed as a witness at the trial; this being several months before the shooting.    And the same may be said of any threatening or blackmailing letter alleged to have been written by defendant to Wash Wells.    Nor should evidence have been received respecting a postal card written in shorthand and received at the postoffice in Rushville, and which defendant claimed belonged to him.

Equally incompetent and objectionable was the evidence of Dr. Culver to the effect that, about three months before Wells was shot, defendant told the doctor that he held a note against Dena Elliott for $2,000 for a gambling debt, and when Culver told defendant that it was worthless, he replied that he would either have his money or Elliott's blood.    There was no exception saved to this latter evidence, and of course defendant cannot be heard to complain of its admission; but certainly it would seem that no objection should be required in order to the rejection of such baldly inadmissible testimony, which could not have the slightest tendency to elucidate any point in issue between the state and the defendant.

III.    The motion for a new trial, among other reasons, claimed that of newly discovered evidence, and was supported by the affidavit of defendant as well as that of Dena Elliott, which was the following:

"State of Missouri

"v.

"Luther Moberly.

"STATE OF MISSOURI, ⎱
"County of Buchanan.  ⎰ ss.

"On this day personally appeared Dena Elliott, to me personally known, who, being by me first duly sworn upon his oath, deposes and says: That he is one of the two persons who planned to shoot Emmett C. Wells at Rushville, Missouri, on the night of April 24, 1891, and that said Wells was shot pursuant to said plans; that he was shot with an old musket, and the ammunition with which the musket was loaded was purchased from the Ackhurst Eberly Arms Company in St. Joseph, Missouri, on the seventeenth day of April, 1891. The shot used were number 6's and the wad that held them down was a piece of the paper sack in which the powder was wrapped when purchased.

"Affiant states that he never, at any time, counseled with Luther Moberly or Joseph Howard about said intended shooting prior to the time it was done. Nor did his associates who fired the shot counsel with them at any time about the shooting; that they were not in any way connected with said shooting, either before, at the time, or after it was done. Affiant states that but two persons knew of said intended shooting; that but those two were in any way connected with it, and that neither of said two were Luther Moberly or Joseph Howard, but were this affiant and another party, whose name he will not mention at this time.

"Affiant states that he never, at any time, had a conversation with Luther Moberly on the evening said Wells was shot, nor did he see him but once that evening, and he was in front of the postoffice just as affiant

arrived in Rushville with one Morris Jones; that he merely spoke to Moberly and had no further conversation with him; that he never saw Howard that evening but once, and that was when he saw him in Emmett C. Wells' store, it was then just 8:25 P. M. Howard looked like he was looking for someone; that they simply spoke to each other and had no further conversation that affiant now remembers of. Affiant states that he did not have a conversation with Moberly and Howard in the street in front of E. C. Wells' store or at any other place prior to the shooting, nor did he see them at any place, except as above stated.

"Affiant further states that he was engaged to be married in September, 1891; that he is a minor, and that E. C. Wells then was, and still is, his guardian; that in the month of July, 1891, long after he had been arrested for the shooting of said E. C. Wells, and after the first trial of Luther Moberly, who was charged with said shooting, he went to his guardian, E. C. Wells, and asked that he be allowed to marry in September; that said Wells said to him: 'You know the condition you are in, and it will be impossible for you to get a license to marry, but if you will come to my store to-morrow (Sunday) I will tell you the conditions on which I will get you the license.'

"Affiant states that he went to the store of said Wells on the following day (Sunday) said Wells was waiting him there; that said Wells took him in the store and closed the door and locked it; that they went to the back part of the store; that said E. C. Wells then told him that he was very anxious to secure the conviction of Luther Moberly, and that if he (this affiant) would make a confession and state that said Luther Moberly fired the shot, and if affiant would so testify at the next trial of Moberly, the said Wells would pay affiant the sum of one hundred ($100) dol-

lars, in cash, and would see that he (affiant) got free by paying a fine of one hundred dollars ($100) and that said Wells would see that this affiant secured the license to be married. Affiant states that he agreed to this proposition, and made a confession in which he implicated Moberly in said shooting; that after he made the confession the said Wells paid him the sum of seventy-five ($75) dollars out of the one hundred ($100) dollars he agreed to pay, and then he refused to allow affiant to be married as agreed upon. Affiant states that the said E. C. Wells has continually been after him to testify against Moberly and that he has brought great and undue influence to bear upon this affiant and to induce him so to do.

"Affiant states that he makes this statement of his own free will and accord, and because a man has been convicted of a crime he never committed and of which he could have known nothing.

"Signed this fifth day of July, 1892.

"DENA ELLIOTT.

"Subscribed and sworn to before me this fifth day of July, 1892.

"[SEAL.] WILLIAM E. STRINGFELLOW,

"Not. Pub.

"Commission expires Aug. 20, 1895."

"STATE OF MISSOURI, ⎫
    "Against              ⎬
"Luther Moberly.     ⎭

"Dena Elliott being duly sworn upon his oath says that if a new trial of the above entitled cause be granted he will appear at said trial and testify to the facts set out in his affidavits filed herein in support of the motion for new trial. DENA ELLIOTT.

"Subscribed and sworn to before me this ninth day day of July, 1892. S. D. COWAN, Clk.
"By C. M. Thompson, D. C."

This affidavit, which is to be taken as *prima facie* true, certainly sets forth newly discovered evidence, evidence which no diligence or vigilance could discover —evidence which, if delivered before a jury would certainly tend very strongly to affect the verdict of the jury.   Such evidence is by no means merely cumulative, it is original and independent evidence, and defendant had the right to have it submitted to a jury to pass upon and determine its truth or falsity ; it should not be smothered and kept from view by counter affidavits. *State v. Murray*, 91 Mo. 95; *State v. Bailey*, 94 Mo. 315; *Casey v. State*, 20 Neb. 138; *Keenan v. People*, 104 Ill. 385; *Sargent's case*, 5 Cowen, 106; 1 Graham & Waterman on New Trials, 172.   Judgment reversed and cause remanded.   All concur.