THE STATE OF UTAH, Respondent, v. ROBERT L. KING and JAMES LYNCH, Appellants.

No. 1485.    (73 Pac. 1045.)

Homicide: Newly Discovered Evidence: Identity of Accused: Changing Testimony: New Trial.

Where, in a prosecution for murder, two principal witnesses as to the identity of accused, without whose evidence a conviction would have been doubtful, make affidavit, without any undue influence to induce them to change their testimony, that they were mistaken in the identity of accused, and, having been shown photographs of another person, were convinced he was the person whom they saw, and accused's co-defendant makes affidavit that accused was in no manner connected with the killing, such affidavits present such newly discovered evidence as warrants a new trial.[1]

(Decided October 22, 1903.)

Appeal from the Third District Court, Salt Lake County.—*Hon. John E. Booth*, Judge.

[1] State v. Campbell, 25 Utah 342; 71 Pac. 529; State v. Haworth, 26 Utah 310, 73 Pac. 413.

The defendants were convicted of murder. From an order denying a motion for a new trial, they appealed.

REVERSED (*as to defendant King.*)

AFFIRMED (*as to defendant Lynch.*)

*C. M. Garwood, Esq.,* and *Messrs. Frick & Edwards* for appellant King.

*W. F. Wanless, Esq.,* for appellant Lynch.

*Hon. M. A. Breeden,* Attorney-General, and *Hon. W. R. White,* Deputy Attorney-General, for the State.

### STATEMENT OF FACTS.

The defendants were, on the 13th day of November, 1900, in the district court of Salt Lake county, convicted of murder in the first degree, for the killing of one Godfrey Prowse. On the 15th day of November, 1900, judgment was pronounced against them, and the death penalty imposed. An appeal was taken, and this court affirmed the judgment of the trial court. 24 Utah 482, 68 Pac. 418, 91 Am. St. Rep. 808. The case was remanded, with directions to the district court to enforce the judgment. On the case being remanded, defendants interposed a motion for a new trial on the ground of newly discovered evidence, which motion was overruled, and they have again brought the case on appeal to this court for review.

It appears from the record that about three o'clock on the morning of September 11, 1900, defendant Lynch, in company with two other men, entered the gambling rooms known as the "Sheep Ranch Club Rooms," in Salt Lake City, and endeavored to hold up and rob the occupants. In this attempted robbery, Lynch and his confederates, all of whom had their

faces concealed with handkerchiefs, shot and killed one Godfrey Prowse. In the affray, Lynch was wounded, rendered unconscious, and captured; hence there is no question raised as to his complicity in the crime for which he stands convicted. The evidence introduced at the trial tended to prove—in fact, did prove—that on the 10th day of September, 1900, at 8 o'clock in the evening, a man entered a certain place of business in Salt Lake City, and purchased from one William Meyers, a clerk in the establishment, three handkerchiefs and a satchel, which satchel he wrapped up in a piece of ordinary wrapping paper. This satchel was carried by one of Lynch's companions at the time the crime was committed, and soon thereafter was found at the bottom of the stairway which leads up to the Sheep Ranch gambling rooms; and a piece of wrapping paper, answering the description of that with which the satchel was wrapped at the time the goods were purchased from Meyers, was found in King's room, in one of the rooming houses in Salt Lake City, where he was registered under an assumed name. The record also shows that, prior to the shooting above mentioned, defendant King bought a shirt at one of the clothing stores in Salt Lake City, which shirt was wrapped up in a piece of wrapping paper similar to that which Meyers used in wrapping the satchel referred to. William Wittenberg, one of the State's witnesses, who at the time of the trial was 18 years of age, testified that between 1 and 2 o'clock in the morning of September 11, 1900, he was in an alley, having been attracted there by shots fired in the direction of the Sheep Ranch gambling rooms, which alley leads from the back of the building where the shooting in question, in which Prowse was killed, took place, to the open street; that he saw two men coming around from the Sheep Ranch with handkerchiefs on their faces; that, when they got even with him, the smaller of the two pulled the handkerchief off of his face, but that the taller one, whom he afterwards recognized as King, left his on while running down

the alley, and pulled it off at the door of what is known as the "Casino Saloon," which the two men entered through the back door; that he (Wittenberg) then ran around, and entered the same saloon at the front door, and saw two men, and recognized the taller one to be the defendant King; that at the time he entered the saloon there were four or five other men there, besides the two whom he saw enter the back door.   There were other circumstances testified to, which, considered in connection with the testimony of Meyers and Wittenberg, tended to implicate King in the crime, but which standing alone would not support a verdict of guilty against him.   In support of the motion for a new trial which is now before us, the defendant King introduced the affidavits of Meyers and Wittenberg, Lynch (King's co-defendant), and the affidavits of several other parties.   Wittenberg, in his affidavit, stated that at the time he testified at the trial of the case, and identified King as one of the men whom he saw run down the alley immediately after the shooting and enter the Casino Saloon, "in my own conscience I then felt an uncertainty as to King being the man, but others said to me, 'We know he is the man, and so do you.'   This influence being brought to bear on me was the principal reason why I identified King.   Since that time, and after careful meditation, and after being shown the likeness of one John Strange, . . . marked 'Exhibit A,' and attached hereto as part of this affidavit, I now say, of my own free will and accord, solely for the purpose of developing the truth in this matter, that I am firmly convinced, beyond a doubt in my own mind, that the man whose photograph is hereto attached as 'Exhibit A' is the identical person whom I saw enter said Casino Saloon after the shooting of Colonel Prowse, and that the defendant Robert L. King is not the man.   Should a new trial of this cause be granted, I shall willingly appear at the trial as a witness therein, and testify to all that I have stated in this affidavit. . . . I make this affidavit of my own free will and

accord, for no other purpose than to promote the ends of justice herein.'' Meyers, in his affidavit, says that he ''has been shown photographs of John Strange, . . . and, upon examining said photographs, he is convinced in his own mind that it is probable that he was mistaken in his testimony on said former trial, when he identified the defendant King as the person to whom he sold goods on the evening of September 10, 1900, and . . . is now convinced that it is probable that the person who really bought goods of him as aforesaid is the person whose photographs are attached to the affidavit of said Wittenberg.'' This presumption is strengthened by the fact that he (Meyers) first described King as a man with a light mustache, and later as a man with a dark mustache. Affidavits of other parties tend to exonerate King from all complicity in the crime of which he stands convicted, and implicate John Strange, who is mentioned in the affidavits of Wittenberg and Meyers. Lynch, King's co-defendant, made affidavit wherein he stated that King was in no way or manner, either directly or indirectly, connected with the shooting of Godfrey Prowse, but the taller of the two men who were with him on that occasion, and took part in the shooting, resembled the defendant King in some respects.

McCARTY, J.—After stating the facts, delivered the opinion of the court.

We are of the opinion that a new trial should have been granted defendant King. It is evident from the record in this case that, without the testimony of Wittenberg and Meyers, it is extremely doubtful whether King could have been convicted, as there is no evidence in the record which, standing alone, separate and apart from the evidence given by said Wittenberg and Meyers, would or could have established his identity as one of the men who participated with defendant Lynch in the commission of the crime.

It is insisted by the Attorney-General that the evi-

dence set out in the affidavits of Wittenberg and Meyers is impeaching, and, therefore, under the general rule that a new trial will not be granted on the ground of newly discovered evidence which only tends to impeach, it ought not to be considered. It appears that no undue influence whatever was used to induce Wittenberg and Meyers, or either of them, to change their testimony and make the affidavits referred to. The affidavits having been made voluntarily, and apparently for no purpose except that justice may be done, the evidence is not impeaching in the sense that that term is generally used and understood. Neither is it cumulative, and its very nature placed it beyond the range of possibilities for defendant King to have produced it at the trial. While courts generally look with disfavor and with some degree of distrust upon applications for new trials based on newly discovered evidence, yet where, as in this case, it clearly appears that the newly discovered evidence would probably change the result, a new trial ought not to be denied. State v. Campbell, 25 Utah 342, 71 Pac. 529; State v. Haworth, 26 Utah 310, 73 Pac. 413; Dennis v. State, 103 Ind. 142, 2 N. E. 349; Mann v. State, 44 Tex. 642. In the case of State v. Moberly, 121 Mo. 604, 26 S. W. 364, the court, in passing upon the sufficiency of an affidavit similar in character to those filed in this case, said: "This affidavit, which is to be taken as prima facie true, certainly sets forth newly discovered evidence which no diligence or vigilance could discover—evidence which, if delivered before a jury, would certainly tend very strongly to affect the verdict of the jury. Such evidence is by no means merely cumulative. It is original and independent evidence, and defendant had the right to have it submitted to the jury to pass upon and determine its truth or falsity."

Viewing the case from the entire record as it is now made up, we are of the opinion that the guilt of the defendant King is surrounded with too much uncertainty to warrant the court in refusing him a new trial. The

case is therefore reversed as to the defendant Robert
L. King, with instructions to the trial court to set aside
the judgment against him and grant a new trial; but
the judgment against the defendant James Lynch is
affirmed, and the case remanded for further proceed-
ings in accordance with law.

BASKIN, C. J., and BARTCH, J., concur.