THE STATE v. THOMAS, *Appellant.*

1. **Weight of Evidence.** Where proper instructions are given this court will not reverse a judgment because it may think that under the evidence a different verdict might well have been rendered; that is a matter for the jury.

2. **Evidence of Character:** PRACTICE. In a case where the testimony is very conflicting, it is a fatal error to permit evidence to be introduced in support of the character of a witness, whose character has not been attacked.

3. **Murder.** The court approves a series of instructions as to murder.

*Appeal from Iron Circuit Court.*—HON. JOHN L. THOMAS, Judge.

REVERSED.

Indictment of Edward Thomas, for the murder of Nicholas Joos.

Ellis Lassater, a witness for the State, testified: I was present when Joos was killed at Middlebrook. I was on the Widow Seitz's porch thirty or forty yards away at first; saw Edward Thomas make a motion with his hands toward Joos' mouth. Joos got up. No blows passed then. They had their hands up. I then went there. They clinched and fell, and rolled down hill ten or fifteen steps, first one on top, then the other. When I came to them Joos was on top and rolled off. Ed. got up. I pulled him off. Joos didn't do anything, but lay on his back with his hands stretched out on the ground. Ed. struck him on his head two or three times with his fist, and knocked him in the mouth, stamped him in the mouth with his boots. I didn't see him stab Joos; but I know he was stabbed; didn't see a knife when I took him away from Joos; saw no wounds at that time; only his mouth was mashed in and bruised; he was lying on his back; he breathed a little and was dead in a short time. I didn't examine his body further at that time. Two or three minutes after the difficulty Ed. got on his horse and started back toward where Joos was lying. I caught his horse by the bridle-rein and stopped him. He then had a knife, but didn't say anything about deceased. He said to me: "If you don't let loose my horse, I'll kill you, God damn you." Deceased was struck with the knife in the left breast.

Charles Seitz testified: I saw Edward Thomas knock a cigar out of Joos' mouth with his finger. Joos got mad. Then they had a few words. Ed. pulled off his coat, and struck first with his fist. Joos struck back. They clinched near the top of the hill in front of Michael Seitz's saloon, staggered and rolled down the hill, quick, Joos on top. I took a seven inch dirk out of Ed.'s hand. William Warren wanted it and I gave it to him. Ed. did not seem to be mad at first. They were talking and joking together

before Ed. slapped the cigar out of his mouth. I don't recollect of Ed. apologizing and offering him another cigar. I was close enough and think I could have heard and seen if it had been done.

Herman Held: I saw Joos and Thomas come into the saloon and drink together, but did not see how the difficulty commenced. I was twenty steps off. I saw them clinch and roll down the hill together. At last Ed. got on top, and at the foot of the hill, took hold of Joos' chin-whiskers and struck him two or three times with his boot. Joos did not hit Ed. but raised as if to strike, tried to strike, but was unable. Ed. pulled him by the whiskers and struck him in the face. I didn't hear either say anything. Joos was lying on his back and seemed to be senseless when Ed. struck him. He didn't resist. I went up in three or four minutes; he was nearly dead, had a knife wound in the breast. I didn't see Thomas have a knife, he struck with his fist; didn't see Joos have any weapon, or try to use one. It was Sunday afternoon between four and five o'clock, June 15th, 1879. Joos was a pretty good sized man, much larger than defendant.

Edward Seitz: Thomas knocked cigar out of Joos' mouth; then he struck first and Joos struck back. Then Ed. drew a knife and struck with it; got it out of his hip-pocket and struck Joos in the breast, a down stroke. They clinched and rolled down the hill. There I took the knife from Thomas and handed it to Charles Seitz and Warren took it from Charles. After the knife was taken from Thomas he hit Joos in the mouth. Joos' teeth were all broken. When Thomas kicked him he was already out of wind, lying on his back, almost dead. Didn't see Thomas do anything else except having a fuss with Lassater; didn't see Joos have any weapon; he didn't use any. Before the fight we were all sitting on the porch of the saloon, and were friendly and in a good humor. Ed. and Joos had an argument; they were quarreling, not talking loud; then they got in the difficulty. I don't know Joos offered to

fight Thomas. I didn't pay much attention. I wasn't much drunk.

Doctor Tom. R. Golding testified to having made the post-mortem examination and described the wound. Witness said: It was about one inch wide in the heart. That man wouldn't live two seconds after receiving that wound. It was instant death. They must have been some distance apart, probably a foot, when it was given. · I discovered no other wound or bruise, no appearance of being stamped in the mouth. If this man had received the wound where the fight began they could not have rolled down the hill; he hadn't any power after that wound. A blow knocking out the teeth after death would not cause discoloration of the skin, but it would cut the lip.

Wm. J. T. Warren for defendant: Joos was standing, Thomas sitting on the steps. Thomas tipped the cigar Joos was smoking, on which there was at least an inch of ashes. Joos did not seem to take it as an insult; he went off, was gone five minutes; when he came back, he was mad; went close to Thomas, who said "Go away from here; I don't want any trouble with you." I said: "Let's have no fussing here; let's have a good time" Joos stood there, went off ten steps, whirled around and came back and took a hold of Thomas by the left shoulder. I said to Joos "Ain't you my friend?" He said "Yes," but held Thomas and crowded him back on the steps. Thomas raised himself. Joos then threw him on the ground; he got up and they clinched and rolled down hill. Joos got on top. I did not know what to do. Thomas got his knife out. Joos saw it and pressed his arm back against the ground. I set my foot on Thomas' arm and tried to pull Joos off. I don't know how, but somebody pulled my foot off; finally the man was struck. Knife was not drawn until after Joos had him down at the foot of the hill. After I stepped on Thomas' hand, Joos let his arm loose, and grabbed his throat with his left hand and struck with his right hand. Joos was sixty pounds heavier than Thomas, large but not

very fleshy, could handle Thomas easily and did so, could have beat him to death. The distance from the saloon, where the fight occurred, to the Widow Seitz's house is about 100 yards, and the house is considerably hidden from view. There were present at the commencement, Mayberry, Watson and myself; Charles and Ed. Seitz shortly afterward; did not see Lassater till after the difficulty. After the flipping of the cigar, Thomas offered an apology; he seemed to have done it in fun. Charles Seitz picked the knife up and gave it to me. I put it in my pocket, but the pocket was torn and I lost it. The weather was warm and Thomas had his coat off, lying across his lap, before the difficulty commenced. About a month and a half ago at Schmitner's saloon, in Pilot Knob, Charles Seitz told me he knew very little of this case; this week in front of Grandhomme's saloon at Ironton, Lassater told me, in the presence of Isaac M. Johnson and others, that he was not present until the trouble was nearly over and knew very little about this case. (Upon this point the witness Lassater contradicted Warren.) I had been at the saloon nearly all day; had been drinking some; can't say I was pretty drunk, or wasn't. I felt the influence of liquor; am positive I wasn't drunk, nor Thomas, but Mayberry was. I believe Joos struck first, but won't swear positive. I didn't see Ed. hit Joos with his fist before they clinched. I know Thomas had the knife. I believe I saw him strike Joos with the knife, but not at the same place; thought he flipped the cigar in fun; his manner was not insulting. When Ed. struck with the knife, Joos had him down and held him by the throat and struck him with his hand. I considered Thomas' life in danger; I do for a fact. I was not helping Thomas.

John S. Ruple: I was in the saloon the day of the killing; heard Joos and Charles and Ed. Seitz talking about Thomas being in the upper part of town. Joos said if he came down there he would fix him. Afterward he

told me: If Ed. Thomas comes here to-day I will kill him. I left before the occurrence.

Dr. Geo.W. Farrar, for the State: A man cut through the heart, as Dr. Golding describes this wound to have been, could live no longer than the time required to drain the blood from the brain—perhaps a few minutes. He might live longer, depending on the character, size and direction of the wound.

Oliver Mayberry: I saw the difficulty; first saw Joos talking angry and loud, pointing to a cigar on the ground; then he walked off and came back and took hold of defendant, who sat on the steps, by the shoulder, and wanted to fight him. Defendant said: "Go away. . I don't want to fight, I don't know you." Warren said to Joos: "I thought you were a friend of me; if you are give me your hand." Joos gave Warren his right hand, his left still on Ed.'s shoulder. He then pushed Ed. back on the steps' floor. Ed. rose and clinched him, and he threw Ed. five or six steps off. Then they clinched and rolled over and over and finally stopped, Joos on top. Next I saw blood run out of Joos. Ed Seitz ran up to me and said: "We want a fair fight;" and there were a few moments I didn't see him. Ed. Thomas was lying on his back; couldn't see where Joos had hold of him. When Ed. Seitz stopped me defendant was completely under Joos' control. Joos was a large man, very muscular. I saw defendant when he got up; he threw Joos off, run around him and went to his horse; didn't see him stamp or kick Joos; didn't see defendant have or flourish a pistol or knife; didn't see Lassater take hold of defendant's horse. I was ten or fifteen feet away. Warren, Thomas and myself had been at the saloon all day, talking and drinking a glass of beer occasionally; don't think at the time of the occurrence I was drunk. I didn't see defendant slap the cigar out of Joos' mouth; didn't see everything; wasn't noticing them; noticed what happened afterward; didn't see Joos before the cigar affair: couldn't swear where he came from; hadn't

been asleep; didn't wake out of a drunken stupor; may have had my eyes shut before that. Warren and I did not assist Thomas in making the assault; knew Thomas had the knife on him before the difficulty; don't know that he had a pistol. Thomas didn't put his hand in his pocket and then strike Joos. I didn't keep Ed. Seitz away and Warren didn't keep Charles Seitz away while Thomas cut Joos.

John Thomas, brother of defendant: I was at Dr. Thomas' office at Iron Mountain, the day of the homicide. When Lassater came for the doctor he stated in my presence that he wasn't present at the difficulty and didn't know much about it. I had a conversation with Charles Seitz at Middlebrook last spring. He said he didn't see the beginning of it, and didn't know how it was.

Isaac M. Johnson for defendant: I measured the distance from Mrs. Seitz's porch to the steps of Seitz's store yesterday. It is 300 feet. You can't see the saloon door from Mrs. Seitz's porch. A person going from Mrs. Seitz's porch would have to go 200 feet toward the place of the difficulty before he could see a man lying on the ground at the foot of the hill where the difficulty ended. The steps of the store where the difficulty commenced can be seen from Mrs. Seitz's porch.

Dr. Clark Patton for the State: Was present at the inquest; saw a bruise or wound on Joos' face, quite a severe one, about the size or a little larger than a silver dollar.

John N. Carter for defendant: Was present when Lassater came for Dr. Thomas; heard him say he never saw the difficulty, and knew but little about it.

Edward Thomas, the defendant: Joos had a cigar in his mouth, with ashes at the end, an inch long. I aimed in fun to flip the ashes with my finger and accidentally struck the cigar and knocked it out of his mouth. He didn't say or do anything then. Afterward he pointed to the cigar and I told him not to mind it. He said "No good." I thought he meant the cigar and offered him another. He

walked away; did not seem mad. I remained sitting. In about five minutes he returned. While he was gone there was loud talking in the saloon. Joos and Charles Seitz were talking in German. After that Joos came out again and came up to me, his hands in a fist; he appeared as if he wanted to fight; pointed to a lot out there as if he wanted to fight; kept pretty close to me; spoke German, which I did not understand. I told him I wasn't mad, not to come closer; that I didn't want to fight. He stopped a little, went toward the saloon ten or twenty feet and came back toward me and repeated same motions; walked right close up to me. I told him to keep his hands off; that I wanted no fuss. He took me by the shoulder, talking German all the time; caught me by the coat collar—by the shoulder, my coat was lying across my lap. Warren stepped in between us and offered a cigar and said to him: "Ain't you a friend of mine?" He said "Yes." "Well," said Warren, "take a cigar from me. He don't want to fight you." After that Warren stepped back, and Joos caught me by the other hand and gave me a jerk forward and threw me on my hands and knees on the ground, five or six feet off. I started to get up. When half up, he down me again, both went down together; we rolled down the hill, first one on top, then the other. When we stopped, Joos was on top. He was a large, very stout, muscular man; had me by my right arm about the elbow with his left hand; was striking me along the side of the head with his right; then he let go of my right arm and caught me by the throat with his left hand; kept striking and holding me by my throat. I didn't do much of anything; couldn't; had a knife in my pocket; tried to get hold of it; got it out and drew it back. Somebody stepped on my arm, then got off. I cut the man on me with my knife; made thrusts; couldn't see whether I hit him or not. He was holding and pounding me when I drew the knife. I drew it with the intention to get him off; he would have killed me if I hadn't. After I used the knife he relaxed his hold on my throat

and I threw him off; didn't kick or stamp; went to my horse. When I mounted my horse wheeled. As soon as I got hold of the rein I pulled him right around and went home; had no knife in my hand then; had no pistol that day; had been drinking beer, but was not intoxicated. Joos was a stranger to me when I flipped his cigar. I showed the dirk to Warren on my way to Middlebrook in the morning; put it into my right pants' pocket; did not put it there to have it handy to cut my way out if I should get into a difficulty. When he took me by the shoulder, he got hold, I guess of my vest and shirt collar. I didn't get up and pull my coat off and hit him; didn't draw my knife at the top of the hill and strike him then; when I had got him off, I went round him, but not to see if I had finished him, or to hit or kick him.

Doctor W. G. Thomas for defendant: When Ellis Lassater came for me he said he was in the garden when the fight commenced and did not see it..

Valentine Effinger and Fred. Kaths for the State, against defendant's objection, testified to the good character of Chas. Seitz and Ed. Seitz.

The foregoing is the substance of the testimony.

The defendant's counsel asked, but the court refused to give the following instructions:

The law of self-defense is emphatically the law of necessity; to which a party may have recourse under certain circumstances to prevent any reasonably apprehended great personal injury, which he may have reasonable grounds to believe is about to fall upon him. If you believe that defendant had reasonable cause to apprehend a design on the part of deceased to commit a felony upon defendant, or to do him some great personal injury and that there was reasonable cause to apprehend immediate danger of such design being carried out, and he cut the deceased with a knife and killed deceased to prevent the accomplishment of such apprehended design, then the killing is justified upon the ground of self-defense, and you should acquit. It is not

necessary to this defense that the danger should have been real or actual, or that the danger should have been impending and immediately about to fall. If you believe that defendant had reasonable cause to believe the facts, and he cut deceased under such circumstances as he believed "to prevent such expected harm," then you should acquit. But before you acquit on the ground of self-defense you ought to believe that defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause have been established before you by the evidence, you are to determine; and unless the facts constituting such reasonable cause have been established before you by the evidence in the case, you cannot acquit in such case on the ground of self-defense, even though you may believe defendant really thought his apprehension reasonable.

In determining the fact as to whether the deceased, Nicholas Joos, first assaulted the defendant, the jury will take into consideration as tending to show that fact, any threats previously made by the deceased, if any, whether communicated to defendant before the difficulty occurred or not.

The jury are the sole judges of the weight of the evidence in the cause, and the credibility of the witnesses, including Ellis Lassater, Charles Seitz, Edward Seitz and Herman Held. Therefore, if you believe from the evidence that any witness has willfully testified falsely as to any material fact in the case, you are at liberty to reject the whole of the testimony of such witness.

The court, of its own motion, gave the following instructions:

1. Gentlemen of the jury: The court instructs you that the defendant, Edward Thomas, stands charged in this indictment with murder of the first degree; and, under the evidence in this cause, you must convict defendant either of murder of the first or second degree, or manslaughter of the third or fourth degree, or acquit him on the ground of self-defense.

2. If you believe and find from the evidence in this cause that defendant, at the county of Iron and State of Missouri, at any time prior to the 26th day of April, 1881, willfully, deliberately, premeditatedly and of his malice aforethought, stabbed, with a knife, and by stabbing killed one Nicholas Joos, you should find him guilty of murder of the first degree. He, who willfully, that is, intentionally, uses upon another, at some vital part, a deadly weapon such as a knife, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and, knowing this, must be presumed to intend death, which is the probable consequence of such an act; and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly and from a bad heart. If, therefore, you believe and find from the evidence in this cause that defendant took the life of Nicholas Joos, by stabbing him in a vital part, with a knife, with a manifest design to use such weapon upon him and with sufficient time to deliberate and fully form the conscious purpose to kill, and without sufficient reason, cause or extenuation, then such killing is murder of the first degree. And while it devolves on the State to prove the willfullness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder of the first degree, yet, these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and if you can satisfactorily and reasonably infer their existence from all the evidence, you will be warranted in finding the defendant guilty of murder of the first degree.

3. If you believe and find from the evidence in this cause that defendant, at the county of Iron and State of Missouri, at any time prior to the 26th day of April, 1881, willfully, premeditatedly and of his malice aforethought, but without deliberation, stabbed with a knife, and by stabbing killed Nicholas Joos, then you should find him guilty of murder in the second degree. If you further believe and

22—78

find from the evidence in this cause that defendant intentionally killed deceased, by stabbing him with a knife, and that such knife was a deadly weapon, then the law presumes that the killing was murder of the second degree, in the absence of proof to the contrary; and it devolves upon defendant to adduce evidence to meet or repel that presumption, unless such presumption is repelled by the evidence introduced on the part of the State.

4. If you believe and find from the evidence in this cause that the defendant, at the county of Iron and State of Missouri, at any time within three years prior to the 26th day of April, 1881, killed said Joos, in a heat of passion, without a design to effect death, but in a cruel or unusual manner, but not under such circumstances as to justify him upon the ground of self-defense, then you should find him guilty of manslaughter in the third degree.

5. If you believe and find from the evidence in the cause that said Joos first assaulted defendant, or that defendant entered into the difficulty with no design to use his knife, and while under the influence of violent passion, aroused by the acts and conduct of said Joos, he drew his knife during the altercation and fatally stabbed and killed deceased, but not in a cruel or unusual manner, without malice, as defined in these instructions, whether with or without an intent to kill; and that he did this under such circumstances as did not justify him, upon the ground of self-defense under the sixth instruction given you by the court, then you should convict defendant of manslaughter of the fourth degree.

6. The word willfully, as used in these instructions, means intentionally, not accidentally. " Deliberately " does not mean brooded over, considered or reflected upon for a week, a day or an hour, but it means an intent to kill, executed by the defendant in a cool state of the blood in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose and not under the influence of a violent passion suddenly aroused by a

real or supposed grievance, amounting to a temporary dethronement of reason. A heated state of the blood produced by no legal or adequate cause of provocation is discarded, but when produced by such a provocation, it is by the law denominated passion or excitement of mind. When the mental excitement or passion is suddenly produced by an adequate cause of provocation such as opprobrious epithets and the like, and is produced to such a degree as to materially impede or interfere with the reason or judgment, then there can be no legal deliberation in an act done under its immediate and sudden influence, and when this passion is produced by an assault or personal violence not provoked by the defendant, and such passion thus aroused is so violent as to render one not unconscious of the act, but deaf to the voice of reason, and under the control of such a passion he suddenly acts, it is not an act of deliberation or of malice. "Premeditatedly" means thought of beforehand, for any length of time however short. "Malice," as used in the indictment, does not mean, in the legal sense, mere spite, ill-will or dislike, as it is ordinarily understood, but it means that condition of mind which prompts one person to take the life of another, without just cause or justification, and signifies the state of disposition which shows a heart regardless of social duty and fatally bent on mischief; and malice aforethought means that the act was done with malice and premeditation.

7. The right to defend one's self against danger, not of his own seeking, is a right which the law not only concedes but guarantees to all men. The defendant may, therefore, have killed deceased and still be innocent of any offense against the law. If, at the time he stabbed deceased he had reasonable cause to apprehend on the part of deceased, a design to do him some great personal injury, and there was reasonable cause for him to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger he stabbed, and at the time he did so, he had reasonable cause to believe, and did believe

it necessary for him to use his knife in the way he did, to protect himself from such apprehended danger, then, and in that case, the stabbing was not felonious, but was justifiable, and you ought to acquit him upon the ground of necessary self-defense. It is not necessary to this defense that the danger should have been actual or real, or that danger should have been impending and immediately about to fall. All that is necessary is that defendant had reasonable cause to believe and did believe these facts. But before you acquit on the ground of self-defense, you ought to believe that defendant's cause of apprehension was reasonable. Whether the facts constituting such reasonable cause have been established by the evidence, you are to determine, and unless the facts constituting such reasonable cause have been established by the evidence in the cause, you cannot acquit in such case, on the ground of self-defense, even though you may believe that defendant really thought he was in danger.

But on the other hand, gentlemen, the law does not permit a person to voluntarily seek or invite a combat, or put himself in the way of being assaulted, in order that when hard pressed he may have a pretext to take the life of his assailant. The right of self-defense does not imply the right of attack, and it will not avail in any case where the difficulty is sought for and induced by the party by any willful act of his, or where he voluntarily and of his own free will, enters into it; no matter how imminent his peril may become during the progress of the affray. The necessity being of his own creation, shall not operate to excuse him. Nor is any one justified in using any more force than is necessary to get rid of his assailant. But if he does not bring on the difficulty nor provoke it, nor voluntarily engage in it, he is not bound to flee to avoid it, but may resist with adequate and necessary force until he is safe.

Now, if you believe from the evidence in this cause that the defendant voluntarily sought or invited the difficulty in which said Joos lost his life, or that he provoked

or commenced, or brought it on by any willful act of his own, or that he voluntarily and of his own free will, engaged in it, then, and in that case, you are not authorized to acquit him upon the ground of self-defense, and this is true no matter how violent his passion became, or how hard soever he was pressed, or how imminent his peril became during the progress of the affray. In determining who provoked or commenced the difficulty, or made the first assault, you should take into consideration all the facts and circumstances in evidence before you.

8. You are the sole judges of the weight of the evidence and the credibility of the witnesses in the cause, and if you believe any one of them has willfully sworn falsely as to any material fact in the cause, then you are at liberty to disregard the whole, or any part of the testimony of any such witness.

9. The law presumes the defendant innocent of the crime charged against him in this indictment or any less grade, and the burden of proving him guilty thereof, beyond a reasonable doubt, rests upon the State. Now, if after a full and fair review of all the evidence in the cause, you entertain a reasonable doubt of defendant's guilt, you should give him the benefit of such doubt and acquit him; but such doubt, to authorize you to acquit him on that ground alone, should be a substantial doubt touching his guilt and not a mere possibility of his innocence.

10. If you convict defendant of murder of the first degree, you will by your verdict simply so say. In that case, you have nothing to do with the punishment to be inflicted. But if you acquit him of murder of the first degree and convict him of murder of the second degree, you will assess his punishment at imprisonment in the penitentiary for a term of not less than ten years, and if you acquit him of murder of both degrees, but convict of manslaughter of the third degree, you will assess his punishment at imprisonment in the penitentiary for a term of not less than two nor more than three years, or by imprisonment

in the county jail not less than six months, or by fine not less than $500, or by both a fine not less than $100 and imprisonment in the jail not less than three months.   And if you acquit him of murder and manslaughter of the third degree, and convict him of manslaughter of the fourth degree, you will assess his punishment at imprisonment in the penitentiary for two years, or in the county jail not less than six months, or by fine not less than $500, or by both a fine not less than $100 and imprisonment in the jail not less than three months.   And if you find the defendant not guilty of any offense, you will return a verdict to that effect.

*Dinning & Burnes* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

SHERWOOD, J.—The defendant was indicted for murder in the first degree, and on trial was convicted of murder in the second degree, and his punishment assessed at ten years in the penitentiary.

The case as a whole was well tried, and the instructions prepared by the court, of its own motion, are exceptionally good.   They embraced within their scope the various grades of murder and of manslaughter in the third and fourth degrees.   The evidence was of such a nature as to warrant instructions for these various degrees of homicide.   The instructions given by the court, of its own motion, fully embodied those asked by the defendant, and there was, therefore, no error in refusing them.

We have carefully read the evidence in this case, and there would seem to be much ground for the opinion that a different verdict could well have been returned by the jury; but that was a matter for them, and so long as proper instructions are given and there is evidence which supports the verdict, it is beyond our province to interfere.   *State v. Musick*, 71 Mo. 401.

1. WEIGHT OF EVIDENCE.

The State v. Thomas.

But for the very reason that the verdict of the jury is to be final in the circumstances we have mentioned, care should be taken that nothing should occur during the trial to influence the minds of the jurors and lead them to a conclusion different from that to which they would probably have come had improper evidence not been admitted. This is especially true where, as here, the testimony is very conflicting, and where it would seem to require but a slight circumstance to turn the scale either way. We allude now to the court permitting the prosecuting attorney to introduce evidence to support the character of Ed. Scitz, whose character had not been attacked. This was clearly incompetent evidence. *State v. Cooper*, 71 Mo. 436; 1 Greenleaf Ev., § 469; 1 Wharton Ev., § 569. Ed. Seitz was the only witness who swore that when the combatants reached the bottom of the hill, Joos was on the bottom and "Ed. on top." The evident purpose of thus bolstering the testimony of Seitz was to strengthen his testimony before the jury, and by doing this to impress upon them the idea that the theory of self-defense had no support in the facts of the case. It is impossible to calculate the injury which the introduction of this evidence—thus unwarrantably and over the objection of the defendant introduced—did to him. We certainly will not assume that no injury resulted to the defendant in consequence of its introduction, sanctioned as it was by the express approval of the court. "A judgment, even in a criminal case, will not be reversed for immaterial errors. In such cases, however, courts will rarely presume that the particular evidence which has been wrongfully admitted could have had no influence on the minds of the jury." *McKnight v. State*, 6 Tex. App. Rep. 158, and cases cited. "If the minds of the jury, at that juncture, were still tremulous with indecision between the innocence and the guilt of the prisoner, the reception of such testimony was sufficient to turn the scale against him. And the courts will hesitate long before they will say that the violation of a plain rule of

*2. EVIDENCE OF CHARACTER: practice.*

evidence, as in the present instance, did not operate to the prejudice of the accused." *State v. Jaeger*, 66 Mo. 173.

We make no comment on the unseemly exhibition of rivalry exhibited during the trial of the cause by physicians who were summoned as witnesses, in the hope that it may not again occur. "When doctors disagree" they should select some other arena—some other time and place than a court-house where a human being is being tried for his life or liberty—for such exhibitions as were witnessed during the trial of this case. We will not be understood as denying to attorneys the assistance which physicians, skilled in their profession, may give in the investigation of wounds in cases of homicide; but certainly such assistance can be secured without bringing the witnesses forward as contestants rather than witnesses.

For the reason aforesaid, judgment reversed and cause remanded. All concur, except Norton, J., absent.