THE STATE v. LANDGRAF, *Appellant.*

1. **Criminal Law**: MURDER: UNSKILFUL MEDICAL TREATMENT. It is no defence, on a trial for murder, where the wound inflicted by the defendant caused the death, that unskilful medical treatment aggravated the wound, and that the deceased might have recovered if greater care and skill had been employed in his treatment.

2. ———: ———: PREMEDITATEDLY. It is not error to define premeditatedly as "thought of beforehand, any time, however short."

3. **The Instructions of the Court**, in this case, approved, and the evidence held to sustain the verdict, which was a conviction of murder in the first degree.

*Appeal from St. Louis Criminal Court.*—HON. JAMES C. NORMILE, Judge.

AFFIRMED.

*Simon S. Bass* for appellant.

(1) The law is well settled by numerous decisions, and has the support of the best jurists, that the defendant will not be guilty of murder, if the wound was not mortal, and that the maltreatment of the wound or the medicine administered to the patient and not the wound itself, was the cause of death. This proposition should have been presented to the jury. The failure to do so was highly prejudicial to the defendant and deprived him entirely of his defence. 3 Greenl. Evid., sec. 139; 2 Bish. Crim. Law, sec. 680; *State v. Parsons*, 21 Ala. 300; *State v. Scatts*, 5 Jones, N. C. 420. (2) The court declared "premeditatedly" means, thought of beforehand for any time, however short. The long-established instruction has been, "premeditatedly" means, "thought

of beforehand for any length of time, however short."
*State v. Harris*, 76 Mo. 361; *State v. Snell*, 78 Mo. 240;
*State v. Ellis*, 74 Mo. 207. (3) The court erred in its
definition of the word, "deliberately." (4) The court
erred in instructing the jury that if the defendant shot
the deceased intentionally and with the intention of
killing her, he could be convicted of murder in the first
degree. This was inconsistent with all the other instruc-
tions in the case.

*B. G. Boone*, Attorney General, *A. C. Clover*, Cir-
cuit Attorney, and *C. O. Bishop* for the state.

(1) The court committed no error in defining delib-
eration. There was no evidence of any kind of
provocation for the shooting. (2) The definition of pre-
meditation is substantially, if not literally correct. The
jury could not have been misled. (3) The instruction in
regard to the medical treatment is absolutely correct.
The principle of law is well settled that if death ensues
from a wound, given in malice, though not in its nature
mortal, but which being neglected or mismanaged the
party dies, this will not excuse the prisoner who gave it;
but he will be held guilty of the murder unless he can
make it clearly appear that the maltreatment of the
wound, and not the wound itself, was the sole cause of
death. 3 Greenl. Evid., sec. 139. If the wound is
mortal, or dangerous, the person who inflicted it cannot
shelter himself under the plea of erroneous treatment.
*State v. Parsons*, 21 Ala. 300; *Commonwealth v. Hackett*,
2 Allen [Mass.] 136, 141. If the person dies by the
action of the wound and by the medical or surgical
action jointly, the wound must clearly be regarded suffi-
ciently a cause of the death. And the wound need not
even be a concurrent cause, much less need it be the next
proximate one, for if it is the cause of the cause, no more
is required. 2 Bish. Crim. Law [7 Ed.] sec. 639. (4) The

court instructed the jury that "in order to convict the defendant of murder in the first degree, you must believe and find from the evidence that defendant not only shot deceased, Annie Tisch, intentionally, but that he shot her intending to kill her. In this connection, however, you are instructed that, in the absence of qualifying facts and circumstances, a person is presumed to have intended the natural, ordinary, and probable result of his acts. Wherefore, if you believe from the evidence that defendant intentionally shot Annie Tisch in a vital part with a deadly weapon, to-wit: a loaded pistol, from which death ensued, you will find that he intended to kill, unless the facts and circumstances given in evidence show to the contrary." Appellant claims that this instruction is inconsistent with every other instruction in the cause and is not the law. Wherein it is inconsistent does not appear. That it is the law, authorities may be cited in abundance. There can be no murder without an intent to kill. *State v. Wieners*, 66 Mo. 13. And when the act is malicious and manifestly dangerous to human life and does produce death, the law will presume an intent to kill. Instructions in the very language of this have been approved. *State v. Thomas*, 78 Mo. 327, 337; *State v. McGee*, 85 Mo. 647, 648.

NORTON, C. J.—Defendant was indicted in the St. Louis criminal court at its May term, 1885, for murder in the first degree for killing one Annie Tisch in the city of St. Louis, in March, 1885. After repeated continuances, he was put upon his trial at the March term, 1887, of said court, and was convicted of murder in the first degree. The case is before us on defendant's appeal, and it is insisted that the court erred in giving instructions, and in order to a proper disposition of the objections relied upon, reference to the evidence is necessary.

A voluntary statement made by defendant after his arrest was put in evidence, and is as follows: "I got acquainted with that girl in Belleville about nine months ago, and we worked together there, and I got closely and intimately acquainted with her (hinting at illicit intercourses). I promised to marry her so soon as I could provide a home for her in this city. I found employment in a machine-shop, and brought her over and put her in a boarding-house at Christy avenue. In a few days I learned that she had intercourse with others in that boarding-house; I upbraided her for it and asked her how it came that she looked so pale and sickly now; she excused herself as being sick, didn't sleep well; and I was satisfied that she was not true to me; and she even played dirty tricks on me, so I resolved to kill her rather than to carry on the way she did; I had set the tenth inst. as the day of our marriage, and made this evening an appointment with her; we would meet at my brother's," and there he said he got in a dispute with her and shot her. This statement was made the night of the shooting and soon after he was arrested.

Joseph Landgraf, a brother of defendant, testified that, during the day of the night on which deceased was shot, defendant came to where he was at work, and during the conversation said: "I have made the motion before already to kill the girl; I am going to kill her to-night;" having requested his brother to let him bring deceased to his house and being refused; "if you don't let me take her to your house I will take her to an assignation house and I will kill her there."

The following statement, made by deceased, in the presence and hearing of defendant, the day after she was shot, was put in evidence: "Annie Tisch is my name; I am twenty-one years of age; this man before me I identify as Henry Landgraf; he is my lover; he is the man who shot me last night, whether with a revolver or anything else I don't know; I stayed at Mrs. Duffy's,

908 Charles street; a gentleman who stays there gave me a scrap-book, and Henry told me the negro had told him that two gentlemen stopping in the same house were too intimate with me, and Landgraf wanted to shoot me; this was on Tuesday night, March 3, 1885; yesterday he came again and wanted me to leave the house and move down town; I went with him about eight o'clock, p. m.; took the cars and got off at Arsenal street and walked to the house on Lemp avenue; I did not enter the house where his sister lives; Landgraf said nothing to me and shot me; that is all I know."

After deceased was shot she was removed to the hospital, where it was ascertained that the bullet had entered the skull just above the eye, but in consequence of the soreness of the wound, excitement and resistance of the deceased to the surgeon's efforts to locate the bullet, its location could not be determined. Afterwards, on the twelfth of March, she was placed under the influence of an anæsthetic, and an operation was performed and an effort made to locate the bullet by probing. After that deceased began to sink and died on the fifteenth of March, ten days after she was shot. A *post-mortem* examination was held, which resulted in showing that the bullet had lodged between the skull and brain; that under it a clot of blood and water had formed which produced compression of the brain, from which she died. There was some evidence tending to show that the wound was not necessarily mortal, and that death might have resulted from the operation performed in probing for the bullet.

Among others, the defendant assigns for error the action of the court in giving the following instruction:

"If you believe and find from the evidence that defendant feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought, shot Annie Tisch and inflicted on her a dangerous wound on some vital part, as charged in the indictment, and that such

shooting and wounding caused the death of said Annie Tisch, you should find the defendant guilty of murder in the first degree; notwithstanding you may also believe and find that unskilled medical treatment aggravated such wound, and that deceased might have recovered if greater care and skill had been employed in treating her.''

It is argued that this instruction denies to defendant the benefit of the defence, that the death of deceased was produced or occasioned by other causes than the wound. We are unable to perceive wherein the instruction does this. On the contrary, it requires the jury to find, before they can convict defendant, that the wound was a dangerous one, inflicted on some vital part of the body, and that it caused the death of deceased.

The direction of the instruction, that if they so found it mattered not that they might also believe and find that unskilled medical treatment aggravated such wound, and that deceased might have recovered if greater care and skill had been employed in treating her, finds abundant support in the authorities. In 3 Greenleaf's Evidence, section 139, it is said : '' If death ensues from a wound given in malice, but not in its nature mortal, but which being neglected or mismanaged the party died, this will not excuse the prisoner who gave it ; but he will be guilty of the murder, unless he can make it clearly and certainly appear that the maltreatment of the wound or his own misconduct, and not the wound itself was the sole cause of his death, for if the wound had not been given the party would not have died.'' So in 2 Bishop's Criminal Law, it is said in section 638, that the doctrine is established that '' if the blow caused the death, it is sufficient, though the individual might have recovered had he used proper care himself, or submitted to a surgical operation to which he refused submission, or had the surgeon treated him differently ;'' and in section 639 it is said : '' In law, if the person dies

The State v. Landgraf.

by the action of the wound, and by the medical or surgical action jointly, the wound must clearly be regarded sufficiently a cause of the death; and the wound need not even be a concurrent cause, much less need it be the next proximate, for if it is the cause of the cause no more is required."

In the well-considered case of *Commonwealth v. Hackett*, 2 Allen [Mass.] 141, after a review of the authorities bearing upon the question, it is said: "The well-established rule of the common law would seem to be that if the wound was a dangerous wound, that is, calculated to endanger or destroy life, and death ensued therefrom, it is sufficient proof of the offence of murder or manslaughter, and that the person who inflicted it is responsible, though it appear that deceased might have recovered if he had taken proper care of himself, or submitted to a surgical operation, or that unskilful or improper treatment aggravated the wound or contributed to the death, or that death was immediately caused by a surgical operation rendered necessary by the condition of the wound. * * * The principle on which this rule is founded is one of universal application, and lies at the foundation of all our criminal jurisprudence. It is that every person is to be held to contemplate and be responsible for the natural consequences of his own acts. If a person inflicts a wound with a deadly weapon in such manner as to put life in jeopardy, and death follows as a consequence of this felonious and wicked act, it does not alter its nature or diminish its criminality to prove that other causes coöperated in producing the fatal result. Indeed it may be said that neglect of the wound or its unskilful and improper treatment, which were of themselves consequences of the criminal act which might follow in any case, must in law be deemed to have been among those which were in contemplation of the guilty party, and for which he is to be

held responsible. But, however, this may be, it is certain that the rule of law as stated in the authorities cited has its foundation in a wise and sound policy. A different doctrine would tend to give immunity to crime, and to take away from human life an essential and salutary safeguard. Amid the conflicting theories of medical men, and the uncertainties attendant on the treatment of bodily ailments and injuries, it would be easy in many cases of homicide to raise a doubt as to the immediate cause of death, and thereby to open a wide door by which persons guilty of the highest crime might escape conviction and punishment."

The court instructed the jury that premeditatedly meant, "thought of beforehand any time, however short." This definition is claimed to be erroneous, as the word has heretofore been defined to mean, "thought of beforehand any length of time, however short." The omission of the word length from the instruction did not change the meaning of the word as heretofore usually defined, and the instruction as given was as favorable to defendant with the omitted word left out as if it had been inserted, and was in no way calculated to mislead the jury or prejudice the defendant.

The court defined deliberately to mean, "done in a cool state of the blood, and not done in a heat of passion engendered by a lawful or just provocation, and the court instructs you that in this case there is no lawful provocation." The record does not disclose any evidence either of a lawful or just provocation. It shows that the design to kill deceased was deliberately formed and meditated upon, and that the deceased was shot in pursuance of and in the execution of this design, and the omission of the court to tell the jury that there was no just cause of provocation, if erroneous, could work no prejudice to defendant.

The following instruction is also objected to, viz:

"In order to convict the defendant of murder in the first degree, you must believe and find from the evidence

that defendant not only shot deceased, Annie Tisch, intentionally, but that he shot her intending to kill her. In this connection, however, you are instructed that, in the absence of qualifying facts and circumstances, a person is presumed to have intended the natural, ordinary, and probable result of his acts. Wherefore, if you believe from the evidence that defendant intentionally shot Annie Tisch in a vital part with a deadly weapon, to-wit: a loaded pistol, from which death ensued, you will find that he intended to kill, unless the facts and circumstances given in evidence show to the contrary."

No such inconsistency as is alleged to exist between this and the other instructions given is perceived, and that it contains a correct declaration of law has been held in the case of *State v. McGee*, 85 Mo. 647.

The cause was fairly and impartially tried, and the evidence fully sustains the verdict of the jury, and we find nothing in the record calling for an interference with the judgment, and it is hereby affirmed. All concur, except Ray, J., absent.