THE STATE v. MUSICK, *Appellant.*

1.  **Criminal Law**: ASSAULT WITH DEADLY WEAPON: PRESUMPTION OF MALICE. When a deadly weapon is used in making an assault upon a person, the law, in the absence of countervailing testimony or circumstances, will imply, or presume, malice as the concomitant of the act.

2.  ———— : ———— : PRESUMPTION. It will also be presumed, in like circumstances, that a man intends the natural and probable consequences of his act when he makes an assault by shooting at a man with a deadly weapon.

The State v. Musick.

3. ———: ———: ———: PRACTICE. It is proper for the court, in developing the law of the case to the jury, to disclose to them the force and effect of the presumption of malice, arising from the use of a deadly weapon, and that a man in making an assault with such weapon will be presumed to have intended the natural and probable consequences of his act.

4. ———: PRACTICE: CONVICTION OF LOWER GRADE OF OFFENSE. Where the evidence discloses that a defendant is guilty of a lower grade of offense than that charged in the indictment, but necessarily included in it, it is proper to instruct the jury that they may convict the accused of such lower grade of crime.

5. ———: ———: ADMISSIONS OF DEFENDANT. Where statements made by the state's witnesses, criminating a defendant, are not denied by him, they stand admitted, the same as if defendant had admitted them in terms.

6. ———: ———: PROOF OF CRIMINAL INTENT. In considering whether a defendant, charged with doing a criminal act, did it with criminal intent, his prior and accompanying acts are all to be considered, and the rule in civil cases as to the existence of a fraudulent intent may be invoked.

7. ———: ———: INSTRUCTION BASED UPON DEFENDANT'S TESTIMONY. Where the testimony of the state's witnesses, showing that an assault was made with felonious intent, is not denied by defendant, and, for that reason, is admitted by him, and it countervails and overthrows his denial of such intent, it is not error to refuse to predicate an instruction upon his denial. (*Distinguishing State v. Banks*, 73 Mo. 592, and *State v. Palmer*, 88 Mo. 538.)

8. ———: ———: SELF-DEFENSE. Where the state's evidence shows a defendant guilty of a felonious assault, which testimony he does not deny, but testifies in his own behalf that he acted solely in self-defense, an instruction upon self-defense should not be given.

9. ———: ———: EXCEPTIONS. The only way exceptions can be saved to matters occurring in the presence of the court is by bill of exceptions in the usual way; it cannot be done by *ex parte* affidavits.

10. ———: ———: REMARKS OF COURT. Certain remarks of the court *held* not to constitute reversible error.

11. ———: ———: REMARKS OF COUNSEL. The argument of prosecuting counsel *held* to be within the record, and legitimate argument, and the threat of the court to fine opposing counsel for interrupting him was proper, and necessary to preserve order and decorum in the conduct of the trial.

The State v. Musick.

12. ———: ———: MOTION FOR NEW TRIAL. A motion for new trial, based upon the ground of newly-discovered evidence, should be denied where it is not supported by affidavit and does not disclose due diligence on the part of the defendant in procuring the testimony.

13. ———: ———: SELF-SERVING ACTS. On a trial for felonious assault, it is not error to refuse to allow defendant to prove that he surrendered himself after the shooting. Such self-serving acts and declarations are irrelevant and inadmissible.

14. ———: ———. Facts stated in the motion for new trial are not proved by the motion itself. They must be preserved in the record or proved by affidavit, or otherwise.

15. ———: ———: SUPPLEMENTAL MOTION FOR NEW TRIAL. A defendant is not prejudiced by the refusal of the court to allow him to file a supplemental motion for new trial where no error had been committed by the court in its previous rulings.

*Appeal from Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*James E. Hazell* for appellant.

(1) Under the evidence, an instruction should have been given by the court for fine and imprisonment in county jail. (2) The court should instruct the jury that the law makes no presumption under the evidence, and that the intention of defendant in shooting is a matter of fact to be found by the jury. (3) The court, under the evidence, should not have given the instruction: "That, if the jury believe, from the evidence, that the defendant aimed at a vital part of the body of A. J. Smith, the law presumes defendant intended to kill A. J. Smith." (4). The defendant had a right, which he could not waive, to be present during the impaneling of the jury. His absence during the examination and discharge of Smith, and examination and acceptance of Wieneke, was properly shown by affidavits filed with his motion for new trial.

(5) The court made remarks to counsel for defendant that had a strong and natural tendency to bias the minds of the jury to the favor of the state and to the prejudice of the defendant. Under the evidence in the case, the court should have instructed the jury upon assaults punishable under sections 1263 and 1265, Revised Statutes, 1879. *State v. Murphy*, 14 Mo. App. 73. And it is the duty of the trial court to give necessary instructions for the proper determination of the case as warranted by the evidence, whether asked to do so or not. *State v. Palmer*, 88 Mo. 568. And, where the trial court fails to instruct upon all the phases of the case presented by the defendant's testimony, the cause should be remanded. *State v. Banks*, 73 Mo. 592. The third instruction, given by the court at the instance of the state, should have been refused. There was no evidence in the case authorizing it, and, if there had been evidence fully supporting it, the court would have erred in thus stating the law. *State v. Stewart*, 29 Mo. 419; *State v. Foley*, 12 Mo. App. 431; *State v. McDonald*, 67 Mo. 16; *State v. Painter*, 67 Mo. 84; Wharton Crim. Ev. [8 Ed.] secs. 736 and 764; 5 Crim. Law Mag. 912. (6) The ninth instruction asked by the defendant, defining intent as a question of fact to be proven, should have been given. *State v. Stewart*, 29 Mo. 419; *State v. Foley*, 12 Mo. App. 431; *State v. South*, 4 Dutch. (N. J.) 28; 2 Starkie on Ev. 739; *Burke v. State*, 71 Ala. (7) The court should have granted a new trial because defendant was absent from the court room during the impaneling of the jury. *State v. Smith*, 90 Mo. 37; *Hopt v. People*, 110 U. S. 574; *Ralls v. State*, 52 Miss. 396.

*John M. Wood*, Attorney General, for the State.

The eighth instruction was properly refused because not predicated on any evidence in the case. "The use of a deadly weapon, in a manner likely to produce

death, makes a *prima facie* case of intent to kill. No effort was made to overcome this *prima facie* case, except by showing that the defendant acted in self-defense." *State v. Schloss*, 93 Mo. 361 ; *State v. Jones*, 86 Mo. 623. The court in its instructions, both on the part of the state and on the part of the defendant, had told the jury that before they would be warranted in finding defendant guilty,. they must find that he made the assault with the intent to kill, and there was no occasion for the giving of the ninth instruction asked by defendant, and no error was committed in refusing it. The eighth allegation in the motion for a new trial—that all of the instructions were not delivered to the jury when they retired—is not supported by the evidence, or any evidence. The motion does not prove itself. *State v. Daniel*, 94 Mo. 301. The remarks of counsel, objected to, were warranted by the evidence, and were strictly within the bounds of legitimate argument. They constitute no ground for a reversal. *State v. Emory*, 79 Mo. 461 ; *State v. Zumbunson*, 86 Mo. 111 ; *State v. Griffin*, 87 Mo. 608; *State v. Hoffman*, 78 Mo. 256 ; *State v. Stark*, 72 Mo. 37 ; *State v. Hoffer*, 71 Mo. 433. It is impossible to see how the remark of the trial judge in passing on defendant's objections could have prejudiced the defendant; and it is a well-established principle of the criminal law that errors which do not tend to the prejudice of the substantial rights of defendants will not justify a reversal. *State v. Holme*, 54 Mo. 160 ; *State v. Grate*, 68 Mo. 22. The motion for a new trial on the ground of newly-discovered evidence is not supported by affidavit, does not state what efforts were made to discover the evidence in time, and it does not appear that the evidence is material. *State v. McLaughlin*, 27 Mo. 111; *State v. Ray*, 53 Mo. 345; *State v. Fritterer*, 65 Mo. 422. The record shows that defendant was present when the jury were examined on their *voir dire*, and when the list of the panel qualified was delivered

The State v. Musick.

to his attorneys. He should have made timely objections to the juror Smith being excused and the juror Wieneke substituted in his place (as alleged in his affidavit), if there had been any ground for his complaint in this behalf. It is too late to raise this objection for the first time in the motion for a new trial. R. S. 1879, sec. 1921; *State v. Ward*, 74 Mo. 253; *State v. Ramsey*, 82 Mo. 133; *State v. Lett*, 85 Mo. 52; *State v. McDonald*, 85 Mo. 539, and cases cited; *State v. Rockett*, 87 Mo. 669; *State v. Reed*, 89 Mo. 168; *State v. Burk*, 89 Mo. 635. The defendant was not entitled as a matter of right to withdraw his motion for a new trial already filed, and to file another in lieu thereof. If he could file such additional motion at all, it is only when in the discretion of the trial judge he is allowed to do so. But even if he was entitled as a matter of right to withdraw his first motion, and file a new one, no error was committed in this case by refusing to allow defendant to file his last motion, for the reason that no new grounds for a new trial are alleged in said motion.

SHERWOOD, J.—Indicted under the provisions of. section 1262, Revised Statutes, 1879, for an assault with malice aforethought, the defendant on being tried was convicted, his punishment assessed at four years in the penitentiary and judgment accordingly, hence his appeal.

The testimony for the state was substantially as follows: The defendant called at the store of P. R. Burnett, at Wolfe's Point, in Moniteau county, Missouri, late in the evening of July 25, 1887, just as he (Burnett) was closing up, and inquired for the "blacksmith." The blacksmith was A. J. Smith, the prosecuting witness and injured party, who was engaged in the business of blacksmithing at that place. Burnett told him he was over home, but he would be along pretty soon. Defendant said "he had been telling lies

on him and he had to take it back, or he would put a hole through him." He walked behind the counter and commenced looking in the showcase, and by this time Smith stepped into the door. As soon as defendant saw him he said: "Old man, you have been telling lies on me, and have to take them back." Smith said: "Louis" or "Bud, what's the matter? Explain your self." Defendant then pulled out his revolver, came out from behind the counter and advanced two or three steps toward Smith and shot him, the bullet taking effect in and breaking his right arm. Before defendant shot, Burnett who was standing between the two men, attempted to prevent defendant from shooting, but was compelled by the latter to stand aside. He then pointed the pistol at Smith's breast and attempted to shoot him again, but it snapped; and when he could not make the pistol fire he commenced striking him over the head with it. Smith then seized him and pushed him over down behind the counter and held him until he promised he would let him alone if he would let him up. Smith let him up and went back to the house. There had been no previous difficulty between the parties, and nothing had been, or was, said or done by Smith to provoke the difficulty at the time.

The defendant testified in his own behalf that he was in the store at Wolfe's Point and Smith came there. "When he came in the store I said, 'Look here, I understand you have been telling lies on me.' He said, 'Explain yourself, sir.' I told him then that I understood he had been telling it around that I had told him that I had seduced a certain girl, I told him that was all a lie and I would like to get him to straighten it up. He run at me and said, 'You little son of a bitch, I will break your neck.' He run at me and I shot him."

He further testified that Smith struck him on the right shoulder, bruising it considerably, and that this was about the time he shot him; that he aimed to shoot

him about the shoulder, and that he shot without any intention of killing him; did not attempt to shoot him a second time; and that he shot him because he was not able to stand up and fight him. It was also shown that defendant was physically weak; that one of his legs had so perished away that it was of little use; and that his reputation was excellent as a peaceable citizen.

At the instance of the state the court gave these instructions:

"1. If the jury believe from the evidence that the defendant Lewis Y. Musick, at the county of Moniteau, at any time within three years next before the finding of the indictment, feloniously, on purpose and of his malice aforethought, did shoot at Andrew J. Smith, with intent to kill the said Smith, the jury will find the defendant guilty and assess the punishment at imprisonment in the penitentiary not less than two years and not exceeding ten years.

"2. The court instructs the jury that the words on purpose as used in these instructions mean intentionally, not accidentally. The word malice as used in the indictment does not mean in the legal sense mere spite or ill-will or dislike as it is originally understood, but it means condition of mind which prompts one person to take the life of another without just cause or justification, and signifies that state of disposition which shows a heart regardless of social duty and fatally bent on mischief. Aforethought means thought of beforehand for any length of time, however short.

"3. If the jury believe from the evidence that the defendant shot at A. J. Smith, and aimed to shoot him in a vital part, the law presumes that he intended to kill him.

"4. The jury are instructed that they are the sole judges of the credibility of the witnesses and of the weight to be given to their evidence, and in this connection the jury are instructed that the defendant is a

competent witness in his own behalf, but, in determining the weight to be given to his evidence, the jury may take into consideration the fact that he is the party on trial and the interest he has in the result of the cause.

"5. If the jury have a reasonable doubt of defendant's guilt, they should acquit him, but a doubt to authorize an acquittal should be substantial doubt touching defendant's guilt, and not a mere possibility of his innocence."

On behalf of the defendant the court gave the following instructions:

"1. The jury are instructed that a probability of defendant's guilt as charged in the indictment is not sufficient to warrant a conviction, nor is it sufficient that the greater weight or preponderance of the evidence supports the allegations of the indictment; nor is it sufficient that, upon the doctrine of chance, it is more probable that the defendant is guilty; to warrant a conviction of the defendant he must be proved to be guilty so clearly and conclusively that there is no reasonable theory upon which he can be innocent when all the evidence in the case is considered together.

"2. The jury are instructed that to constitute the right of defense the actual striking of a blow is not necessary, nor is it necessary that the assailant be in striking distance.

"3. If the jury believe from the evidence that the defendant Lewis Y. Musick apprehended a design on the part of Andrew Smith to commit a felony on him, or to do some great personal injury, and that there was a reasonable cause to apprehend immediate danger of such design being carried out, and that he shot Smith to prevent the accomplishment of such design, then the shooting is justified upon the ground of self-defense, and you should acquit. It is not necessary to this defense that the danger should have been real and

actual, or that the danger should have been impending and immediately about to fall ; if you believe that the defendant had reasonable cause to believe these facts and he shot under such circumstances, as he believed, to prevent such expected harm, then you should acquit."

There was written on the margin of said instruction the following, to-wit : "Given because not objected to."

"4. The court instructs the jury that, although they may believe from the evidence that the facts and circumstances proved and relied on to establish defendant's guilt are in doubt, or that the intent of the defendant to kill, as charged in the indictment, is in doubt, then, if the prisoner has by evidence satisfied you that he was a man of good character for peace and quietude of life up to the time of the alleged offense in this case, the presumption of law is that the alleged crime is so inconsistent with the former life of defendant that he could not have intended to commit such a crime, and it would be your duty to give the defendant the benefit of that presumption and acquit him."

"6. The court instructs the jury that, although they may believe from the evidence that defendant shot at and wounded A. J. Smith in the right arm, yet if from the evidence they find the shooting consistent with any other intention than the intention of killing said Smith, then they should find the defendant not guilty.

"7. The court instructs the jury that in this case the law raises no presumption against the prisoner, but every presumption of law is in favor of his innocence, and in order to convict him of the crime alleged in the indictment, or of any lesser crime included in it, every material act necessary to constitute such crime must be proven beyond a reasonable doubt ; upon any single fact or element necessary to constitute the crime, it is their duty to give the prisoner the benefit of such doubt and acquit him."

The court refused the following instructions asked on behalf of the defendant as above referred to:

"8.   The court instructs the jury that if they find that Lewis Y. Musick, the defendant, shot A. J. Smith with a view merely of disabling him, *though the defendant made the first attack*, they may find him guilty of *common assault*, and assess his punishment at a fine of not to exceed one hundred dollars or imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

"9.   The court instructs the jury that the intent in this case is not one of inference of the law, but a question of fact to be proven to the satisfaction of the jury, beyond a reasonable doubt, before they are justifiable in finding a verdict of guilty."

I.   When a deadly weapon is used in making an assault upon a person, the law, in the absence of countervailing testimony or circumstances, will imply or presume malice as the concomitant of the act.   So that law, in like circumstances, will presume a man intends the natural and probable consequences of his act when he makes an assault with a deadly weapon by shooting at a man.   And it is proper for the court, in developing the law of the case to the jury, to disclose to them the force and effect of such presumptions.   This has been the constant course of practice in this state, and is affirmed by a multitude of our decisions.   *State v. Landgraf*, 95 Mo. 97, and cases cited; *State v. Tabor*, 95 Mo. 585, and cases cited; *State v. Wisdom*, 84 Mo. 187; *State v. Thomas*, 78 Mo. 327.   These authorities sanction the giving of the third instruction for the state as one eminently proper to give, and the evidence fully warranted it.

II.   It is contended that an instruction should have been given looking to the conviction of defendant of a lower grade of offense than that charged in the indictment, but necessarily included therein.   It is undoubtedly true that such an instruction is proper where the

evidence justifies its giving. R. S. 1879, sec. 1655. Does the evidence in this case, considered *as a whole*, warrant the giving of such an instruction?

It will have been observed that the defendant went to the store armed with a revolver, and inquired for the "*blacksmith*." On being told that Smith, the person referred to, was over home, but would be along pretty soon, the defendant said Smith "*had been telling lies on him, and he had to take it back, or he would put a hole through him*." He then went behind the counter and awaited Smith's coming. When Smith came into the door, defendant said: "Old man, you have been telling lies on me;" and, when Smith called upon him for an explanation of what he meant, defendant drew his revolver, cocked it and came from behind the counter, and compelled Burnett to stand aside when he tried to prevent the shooting.

These statements made by the state's witnesses *were not denied by defendant, and, therefore, stand admitted*, as much so as if the defendant had admitted them *in terms*. His previous preparations; his threats; his coming from behind the counter with weapon drawn and ready, as well as Burnett's vain efforts to interpose, all stand admitted. In such circumstances, I do not believe a trial court should stultify itself by giving an instruction of the nature mentioned. And in considering whether a defendant charged with doing a certain act did so with a criminal intent, his prior and accompanying acts are all to be considered, and the rule in civil cases as to the existence of a fraudulent intent may be invoked here. When speaking of the rule in relation to a fraudulent intent, SUTHERLAND, J., in *Babcock v. Eckler*, said: "Intent or intention is an emotion or operation of the mind, and can usually be shown only by acts or declarations; and, *as acts speak louder than words*, if a party does an act which must defraud another, his declaring that he did not by the act intend

to defraud is weighed down by the evidence of his own act." 24 N. Y. 632, cited in Wait on Fraud. Con. [2 Ed.] sec. 796.

It is true, we have said that instructions should be given in accordance with the testimony of a defendant witness in a criminal case (*State v. Banks*, 73 Mo. 592; *State v. Palmer*, 88 Mo. 568), but we have never yet said so in such circumstances as the present case presents; a case where the facts not denied, and, therefore, admitted, countervail and overthrow the feeble force of any testimony of the defendant as to his non-murderous intention in firing the shot. On the physical facts of this case, and the admitted facts of this case, no one can doubt that the defendant came from behind the counter not to *repel* but to *make* an attack; to carry out his previous threats; there is no other reasonable conclusion to be drawn from the premises in evidence. There was no error, therefore, in the refusal of the defendant's eighth instruction, saying nothing of other faults which that instruction contains to the effect that one man can make the *first attack* on, and shoot, another; break his arm with the intent of disabling him, and still be only guilty of a *common assault*.

III. As to the third instruction given at the instance of the defendant in relation to self-defense, the remarks made in the preceding paragraph may be considered in this connection (*State v. Anderson*, 89 Mo. *loc. cit.* 332), and it may further be said that the state could not appeal from the giving of that instruction, and it was certainly most favorable to the defendant. This disposes of that instruction, as well as its marginal indorsement.

IV. The other instructions given on behalf of the state are the customary instructions and require no further comment; nor do the other very favorable instructions for the defendant require any further discussion.

The State v. Musick.

V. Relative to the alleged absence of the defendant from the court room, while his counsel was examining Smith, one of the proposed panel, and substituting Wieneke in his place, it may be said: *First.* As to matters occurring in the court room, *i. e., in the presence of the court,* the only way matters of exception can be saved is by the bill of exceptions in the usual way, and not by *ex parte* affidavits as attempted in this instance. *State v. Hayes,* 81 Mo. 574. So that there is no legitimate evidence before us of the absence of the defendant.

*Second.* Besides, the record shows that the defendant was present when the jury were examined on their *voir dire,* and when the list of the panel qualified was delivered to his attorney.

VI. It appears that, about the close of the examination of Pauline Smith, Mr. Wood, the prosecuting attorney, called her attention to a note book which contained, it seems, her testimony at the preliminary examination, and asked: "Is that your signature?" and she answered "yes." It does not appear that any further use was made of the book, whether to refresh the memory of the witness or otherwise; and it is not seen how the question asked and answered could have worked the defendant any hurt, but his counsel objected, and thereupon the court said: "Very well, object and object; the supreme court will get its fill of your objections." This remark is also assigned for error. It is impossible to see how this remark, somewhat petulant though it may have been, could have damaged the defendant's cause. At all events, it does not constitute reversible error in a case as plain as this one.

VII. Contention is made that the prosecuting attorney in his closing speech was permitted, over the objections of defendant, to make remarks outside of the record. The remarks complained of are these: "What position are we to be placed in if a person in any case

Vol. 101—18

must prove the intent of a man save by the actions of a man? How may we, now as a witness put upon the stand, dive down into the depths of a man's heart and determine his intent save by the proof of his actions and his conduct? Gentlemen, that matter appears to be too plain, too simple, for any other discussion. The court tells you if he shot at him with a loaded pistol and aimed to hit him in a vital part the law presumes he intended to kill him. And if a man shoots at the body of a man he shoots at the bulk of a man, he has aimed at a vital part. Instead of waiting for Smith to reply he shoots him down. If you believe a man under those circumstances can turn in and shoot a man down who is in the transaction of his ordinary business, if that is the law of this country, then there is very little protection for us in this country.''

These remarks are clearly within the record and within the line of legitimate argument, and the threat of the court to fine the counsel for the defendant if again he interrupted the prosecuting attorney when speaking within proper bounds was only the performance of the plain duty of the court to preserve proper order and decorum in the conduct of the cause.

VIII. One ground of the motion for new trial is newly-discovered evidence, but that motion does not comply with the rules laid down by this court in frequent instances, in that it is not supported by affidavit, and does not disclose any diligence, or any other of the six requisites mentioned in the following cases: *State v. McLaughlin*, 27 Mo. 111 ; *State v. Ray*, 53 Mo. 345 ; *State v. Fritterer*, 65 Mo. 422 ; *Cook v. Railroad*, 56 Mo. 380 ; *Snyder v. Burnham*, 77 Mo. 52.

IX. There was no error in refusing to permit the defendant to introduce testimony to show that after the shooting he had surrendered himself to the sheriff. Such self-serving acts or declarations are wholly inadmissible and irrelevant to the issue joined.

X.   Another ground urged for reversal is that all of the instructions were not given to the jury when they retired ; but this contention is not supported by the evidence, which shows that the jurors were kept in the *court room* one night when considering of their verdict, and that if any instruction was subsequently found on the table in that room it must have been accidentally left by the jurors.   But there is no proof of its having been thus found, by affidavit or otherwise, and the mere recital in the motion to that effect possesses no probative value.   *State v. McDaniel*, 94 Mo. 301.   And, at any rate, the seventh instruction given for defendant even had it been missing could not have prejudiced him.

XI.   Lastly, it is insisted that error was committed by the trial court in refusing defendant permission to file a supplemental motion for new trial, within the statutory four days, but if, as already seen, no error had been committed in the previous rulings of the court, it is not readily seen how any subsequent action of the court relative to such supplemental motion, could have prejudiced the defendant.

We affirm the judgment.   All concur.