THE STATE v. SNEED, *Appellant.*

1. Criminal Practice: SPECIAL JUDGE: REVERSAL OF JUDGMENT: STATUTE. The power of a special judge, elected by the members of the bar, under section 1875, Revised Statutes, where the defendant, in a criminal case, applies for a change of venue, is not so exhausted, under section 1875, of the Revised Statutes, on the signature, by him, of the bill of exceptions, that he cannot proceed with the cause, when the judgment has been reversed in the Supreme Court, and the cause remanded for trial.

2. ——: ——: ——: ——. The first trial is regarded in the law as a mistrial, and the special judge continues to be the proper judge in the cause.

3. Criminal Law: MURDER IN FIRST DEGREE: SELF-DEFENCE. The evidence in this cause held to show a case of murder in the first degree, or one of self-defence, and the trial court, therefore, did not err in refusing instructions on murder in the second, and manslaughter in the fourth, degree.

The State v. Sneed.

4. ——— : LAWFUL AND REASONABLE PROVOCATION : INSTRUCTION. It is the duty of the court, on the trial of an indictment for murder in the first degree, to define what is a lawful or reasonable provocation, to reduce the grade of the offence, only where there is evidence tending to show such provocation.

5. ——— : ——— : ———. Where there is no such evidence, the jury should be instructed to that effect.

6. Criminal Practice : CONTINUANCE. A continuance asked because of the absence of a witness, held properly refused, because the application did not show the exercise of proper diligence to procure his attendance, and it also appearing that the matters intended to be shown by the witness would have been inadmissible as evidence.

7. ——— : VARIANCE : STATUTE. An instruction asked by the defendant, to the effect that evidence of the killing of a man called *Loomis* would not sustain an indictment for killing Orlean Harrison Loomis, held properly refused, under section 1820, Revised Statutes.

*Appeal from Jackson Criminal Court.*—HON. J. K. SHELEY, Special Judge.

AFFIRMED.

*J. W. Jenkins* and *C. W. Clarke* for appellant.

(1) The special judge, who presided at the trial, was not elected as required by the statute, and had no authority to preside as judge, try and sentence the defendant. R. S., sec. 1879 ; *Lacy v. Barret*, 75 Mo. 469. (2) The failure of the court to instruct the jury as to manslaughter in the fourth degree was error. *State v. Anderson*, 86 Mo. 309 ; *State v. Banks*, 73 Mo. 597 ; *State v. Robinson*, 73 Mo. 308; *State v. Hill*, 69 Mo. 452. (3) The court also erred in refusing to instruct the jury as to murder in the second degree. *State v. Robinson*, 73 Mo. 308 ; *State v. Curtis*, 70 Mo. 594 ; *State v. Edwards*, 70 Mo. 480. (4) The court should have granted a continuance, on the affidavit of defendant. The importance of the testimony of T. M. Folks is fully shown, as well as due diligence. *State v. Bradley*, 90

Mo. 160; *State v. Jennings*, 81 Mo. 185. (5) The instruction, which is numbered one in the record, is relative to a variance in the proof in the name of the deceased. The indictment charged the defendant with killing Orlean Harrison Loomis. The proof was that he killed a "man called Mr. Loomis," no one being able to give his first name. The court was asked to say to the jury that the evidence must correspond to the charge in the indictment in the name of the deceased; that evidence of the killing of a man called Loomis would not sustain an indictment for killing Orlean Harrison Loomis. This was refused. Such a variance and uncertainty would not sustain an indictment for a petty larceny, to say nothing of a case like this, when a man's life is involved. *State v. Fay*, 65 Mo. 490; *State v. Wilson*, 30 Conn. 500; *State v. English*, 67 Mo. 136; *Commonwealth v. Gill*, 14 Gray, 400; *Timms v. State*, 4 Cold. (Tenn.) 138; *Hensley v. Commonwealth*, 1 Bush (Ky.) 11; *Rockwell v. State*, 12 Ohio (N. S.) 427.

*B. G. Boone*, Attorney General, for the state.

(1) Defendant's application for a new trial was properly overruled. No diligence was shown by defendant in endeavoring to procure the attendance of the witness. R. S., sec. 1884; *Wood v. Railroad*, 58 Mo. 109; *State v. Lange*, 59 Mo. 418; *State v. Able*, 65 Mo. 357. Besides, the evidence of the witness, if present at the trial, would have been incompetent, as not being a part of the *res gestae*. *State v. Green*, 13 Mo. 382; *State v. Evans*, 65 Mo. 578; *State v. Snell*, 78 Mo. 240. (2) The special judge was possessed of the full power of a regular judge, and, in the event of a mistrial, was authorized, without reëlection, to proceed to try the case. R. S., secs. 1878-9; *State v. Hayes*, 78 Mo. 580; *Ex parte Bradley*, 48 Ind. 556. (3) The instructions given for the state properly declared the law, and there was

no error in the ruling of the court on defendant's refused instructions.

NORTON, C. J.—The defendant was tried and convicted of murder, in the first degree, at the August term, 1886, of the criminal court of Jackson county, and his motion for a new trial being overruled, he has appealed to this court, and assigns, as his first ground of error, that the special judge, who presided at the trial, was not elected as required by the statute, and had no authority, as judge, to try and sentence defendant. It appears from the record that Hon. H. P. White was the judge of the criminal court of Jackson county, and that, at the August term, 1884, of said court, defendant made an affidavit, under section 1877, which rendered said judge incompetent to preside at the trial, whereupon an election was ordered and held under section 1878, Revised Statutes, which resulted in the election of Hon. J. K. Sheley, as special judge, who proceeded to try the cause, which resulted in the conviction and sentence of defendant for murder in the first degree, which judgment, on appeal to this court, was reversed, and the cause remanded for trial to said criminal court, and, when called for trial, at the August term, 1886, of said court, said Sheley, who had been elected special judge to try the case, as above stated, proceeded to preside at the trial, resulting, as before stated, in the conviction of defendant.

It is claimed by counsel that under section 1879, Revised Statutes, the power of the special judge to try the cause was exhausted when he signed the bill of exceptions in the trial had at the August term, 1884. The above section is as follows: "The special judge elected, as provided in the next preceding section, shall immediately after his election take an oath to support the constitution of the United States and of the state of Missouri, and to hear and try the particular cause or

motion pending, without fear, favor, or partiality; and such special judge shall possess, *during such trial or hearing and in relation thereto only*, all the powers, perform the duties, and be subject to the same restrictions as the judge of said court, but shall have no power whatever in any other cause than the one specified in the order of record; and *upon the conclusion of the trial* of said cause in said circuit or criminal court, *his power and duties as such special judge shall instantly cease and determine.*"

We are of the opinion that the trial referred to in the italicized words of the section above mean a trial in its legal sense, that is, a trial had according to the rules of law. The trial had in August, 1884, was not such a trial, but was, in the judgment of this court, a mistrial, and hence the cause was remanded for trial. Suppose, as suggested by Justice Sherwood during the oral argument, the special judge had sustained defendant's motion for a new trial on the ground of error committed in the trial had, could there be any question as to the right of the special judge to have proceeded and tried the cause? We think not. And the same result would follow whether the new trial was granted by the special judge, or, as it was, by this court, in reversing the judgment and remanding the cause. This, we think, is made apparent by section 1998, Revised Statutes, article 21, which is devoted to appeals and writs of error in criminal cases, and is as follows: "The court to which any criminal cause shall be remanded for new trial shall proceed therein in the same manner as if such cause had not been removed into the Supreme Court." The case of *Lacy v. Barret*, 75 Mo. 469, to which we have been cited, has no bearing on the question we have been discussing.

It is next insisted that the court erred in refusing to give instructions for murder in the second degree, and manslaughter in the fourth degree. We

are of the opinion that the evidence did not call for either of such instructions. On the part of the state the evidence disclosed substantially the following state of facts: That deceased and defendant, on the twenty-sixth of July, 1884, drank together at a saloon in Kansas City; that deceased was greatly under the influence of liquor, and while standing at the bar defendant slipped the watch of deceased from his pocket, and, on discovering that his act in so doing was observed by two others, handed the watch to the saloon keeper to be kept for the deceased; that soon after this defendant was seen standing outside of one of the doors of a grocery, or saloon, in which the deceased was at the time, as if watching for some one, and was heard to remark, "damn you, you will not get away from me this time." Soon after this, one Sutherland, with deceased, whom he was trying to get to go to his home, came out of the saloon and started, being followed by the defendant; that deceased insisted on returning to get something more to drink, and did so against the protestations of his companion, Sutherland; that, upon returning to the saloon, defendant followed deceased in, and went up and caught him by the coat, and deceased turned to him and said, "I want you to let me alone, I have nothing for or against you;" thereupon, defendant turned squarely to deceased, and putting his hand on his pocket, said, "I will shoot you so d——d full of holes they will make a sifter of you."

Soon after this deceased came out of the saloon and started towards his home, the defendant following after him, some distance behind, and who, according to the evidence of Mr. Brink, after getting within a few feet of deceased, called him a G—d d—n son of a bitch, which caused witness, who had passed them, to turn around, and on doing so he saw defendant draw his revolver from his hip pocket and shoot the deceased; that when defendant applied the above epithet to deceased, he

turned around and told defendant to keep away from him, and this is evidently the remark made by deceased, to which the cross-examination of this witness refers. According to the evidence of another witness, Miss McMahan, the deceased was going down Twenty-third street; that defendant started after him and called to him to hold on, and deceased turned and said what do you want, to which defendant replied, "God damn you wait, and I will show you what I want with you," and pulled his revolver out of his pocket, and walked rapidly after him, The evidence on the part of the state showed that deceased, when shot, had no weapon on his person, and that his hands were hanging down by his side, and that the shot which killed deceased was planted in his breast, near the right nipple, and passed through the liver.

The following version of the difficulty is given by the defendant in his evidence : " I started from the saloon to the waterworks. As I started I came up to this street, and turned down here to the waterworks to go west; there was a man in the street ahead of me ; when I got to him I saw it was Loomis; I spoke to him ; I said, 'where are you going ?' He said, 'I am going to the waterworks.' I said, 'I am going there too ;' and *we walked side by side a few steps,* when he reached around me that way; I said, 'what do you mean by doing that ?' He said, 'I have been laying for you; I want to get you away from the crowd to kill you, and I am going to give it to you now.' He made a plunge at me like that. I saw he had a knife in his hand ; then I drew my pistol. My revolver is a double action, and I fired without taking aim ; I fired more to scare him than anything else."

Q. "Did you, or didn't you, intend to hit him ?"

A. "I shot more to scare him than anything else, and to keep him away from me."

Q. " When you went down the street did you go out there with the intention of shooting him?"

A. "No sir, I did not."

If the deceased was killed under the circumstances detailed by the witnesses on the part of the state, the crime of murder in the first degree was fully made out, and there is nothing in the evidence which required the court to give instructions upon any other grade of homicide. If, on the other hand, the deceased was killed under the circumstances detailed by defendant, the law of self-defence justified him in the killing.

The instructions given by the court in regard to murder in the first degree are such as have been repeatedly approved by this court, and are unexceptionable. And the instructions given on behalf of defendant gave him the full benefit of the law of self-defence, and of reasonable doubt. In defining the word deliberately, the jury were told that it signified done in a cool state of the blood—that is, not in a sudden passion, caused by a lawful or reasonable provocation, or by some just cause of provocation. And the court instructs you, that, under the evidence in this case, there is no evidence tending to show the existence of any such passion or provocation. It is only the duty of the court to define what is lawful or just provocation when there is evidence in the case of such provocation, and if there is no such evidence the court should tell the jury so, as it did in the instruction of which defendant complains. In the case of *The State v. Talbott*, 73 Mo. 347, a conviction for murder in the first degree was upheld, although, in the definition of the word deliberately, the words " without reasonable provocation, or some just cause of provocation," were left out; and it was upheld on the distinct ground that there was no evidence of any such provocation.

In the case before us, there is no evidence of any act or word on the part of deceased tending to show

such provocation. The evidence of defendant as to what was said and done by deceased, if believed by the jury, constituted a complete defence, and the jury were, in effect, so told by the court in the instructions given on his behalf.

It is also insisted, that the court erred in overruling defendant's application for a continuance. We think it was properly overruled because it failed to show proper diligence. The witness wanted, it is stated, was in Virginia. He lived in Jackson county. It is not shown when he went, no subpoena had been issued for him, and all the evidence of this witness, having a bearing on the case, would have been inadmissible had he been present, for the reason that it was proposed to show by him what defendant said after the killing took place.

It is also insisted that the court erred in refusing to instruct to the effect, that before the jury could convict the defendant they must believe, not only that he killed Loomis, as charged, but that he killed Orlean Harris Loomis. Under section 1820, Revised Statutes, this instruction was properly refused, if for no other reason than the one there given.

Two juries have passed on this case and reached the same verdict, and after a careful examination we find nothing to justify an interference with the judgment, and it is hereby affirmed, in which all concur.