THE STATE v. HENSON, *Appellant.*

### DIVISION TWO.

1. **Criminal Law:** HOMICIDE : INSTRUCTIONS. Where, on a trial of one indicted for murder, the evidence does not show any just or lawful provocation to reduce the homicide to a grade lower than murder in the first degree, the instructions are properly confined to the latter grade.

2. ———— : MANSLAUGHTER. A court is not authorized to instruct on manslaughter in the fourth degree committed by means of culpable negligence, unless the evidence discloses the existence of such negligence.

3. **Criminal Practice :** ARGUMENT OF COUNSEL. It is not error for the state's counsel to read in his argument to the jury the evidence given on the trial and furnished by the official stenographer.

*Appeal from the St. Louis Criminal Court.*—HON. J. C. NORMILE, Judge.

AFFIRMED.

*Dodge & Mulvihill* and *L. A. McGinnis* for appellant.

(1) The court erred in not fully instructing the jury on the law as applicable to the case. *State v. Palmer*, 88 Mo. 568; *State v. Barham*, 82 Mo. 67; *State v. Banks*, 73 Mo. 592. (2) *First.* The court should have instructed the jury upon murder in the second decree. *Second.* The court should have instructed the jury upon manslaughter in the fourth degree. Kerr, Homicide, sec. 523, p. 575; *State v. Young*, 99 Mo. 666. (3) When there is any evidence whatever, which, if believed, will reduce the crime to murder in the second degree, even though it be given by the defendant himself, he is entitled to an instruction upon the law of murder in the second degree. Kerr on

Homicide, sec. 525, p. 576; *State v. Banks*, 73 Mo. 592.; *People v. Kelly*, 35 Hun ( N. Y.) 295 ; *State v. Edwards*, 70 Mo. 480; *State v. Murphy*, 14 Mo. App. 73 ; *State v. Kelly*, 16 Mo. App. 213 ; *State v. Branstetter*, 65 Mo. 149. (4) When defendant testified he did not intend to kill the deceased, he is entitled to an instruction for a lower grade of homicide than murder in the first or second degree. There was absolutely no motive for the killing. *State v. Palmer*, 88 Mo. 568 ; *State v. Partlow*, 90 Mo. 608 ; *State v. Williams*, 95 Mo. 247. As to manslaughter in the fourth degree. *State v. Emery*, 78 Mo. 77. (5) The first instruction given by the court was clearly error in defining the word "deliberately." There was also error in this instruction in the court declaring "that no testimony disclosed any legal justification or provocation for the killing charged," as there was afterwards an instruction as to accidental killing, and the court should have instructed upon manslaughter in the fourth degree. *State v. Weiners*, 66 Mo. 13 ; *State v. McNally*, 87 Mo. 644 ; *State v. Stephens*, 96 Mo. 637. (6) Instruction, numbered 3, was erroneous. Kerr on Homicide, sec. 532, p. 582 ; *State v. Herrell*, 97 Mo. 105. (7) Instruction, numbered 5, as to "belief of the defendant in regard to the unfaithfulness of his wife," was clearly error in that it introduced into the case an unwarranted element, and tended to mislead the jury. Instruction, numbered 6, as to the intoxication of the defendant, was clearly error for the same reason. There was no evidence introduced to found either of these instructions upon. *State v. Palmer*, *supra ;* Thompson on Charging the Jury, 1880, secs. 69, 71, 72. (8) The action of the circuit attorney in reading to the jury in his closing address from the stenographer's transcript, which was not introduced in evidence, and which was objected to by defendant, was reversible error. *State v. Lee*, 66 Mo. 165 ; *State v. Barham*, 82 Mo. 67.

*John W. Wood*, Attorney General, and *A. C. Clover*, Circuit Attorney, for the State.

(1) The instruction defining murder in the first degree has received the repeated sanction of this court. *State v. Talbott*, 73 Mo. 347; *State v. Thomas*, 78 Mo. 327; *State v. Dickson*, 78 Mo. 438; *State v. Van Sant*, 80 Mo. 67; *State v. Gee*, 85 Mo. 647. (2) The words constituting the elements of the crime charged are correctly defined. *State v. Thomas, supra; State v. Gee, supra; State v. Dickson, supra; State v. Tatbott, supra. First.* The definition of deliberation has received the approval of this court. *State v. Ellis*, 74 Mo. 220, and cases cited as above. *Second.* An erroneous definition of deliberation would be harmless in this case, as there was no evidence of a just or lawful provocation. *State v. Talbott*, 73 Mo. 347; *State v. Sneed*, 91 Mo. 559; *State v. Ellis*, 74 Mo. 220. *Third.* Where there is no evidence of a lawful or just provocation the jury should be instructed to that effect. *State v. Sneed*, 91 Mo. 559; *State v. Ellis*, 74 Mo. 220; *State v. Landgraf*, 95 Mo. 37. (3) The evidence discloses but one grade of homicide, murder in the first degree; the theory of the defense was an accidental killing, and it would have been an injustice to the defendant to have instructed on any of the lower grades of homicide. *First.* It is error for courts to instruct for murder in the second degree, when the evidence does not warrant it. *State v. Nelson*, 88 Mo. 126; *State v. Stoeckli*, 71 Mo. 559; *State v. Mahley*, 68 Mo. 315; *State v. Hopper*, 71 Mo. 425. *Second.* The state established more than the mere guilty agency of the accused in causing the death of the deceased, and it will not be presumed, therefore, that the crime was murder in the second degree. *State v. Anderson*, 98 Mo. 461. *Third.* The evidence did not show any culpable negligence on the part of the defendant, and the court could not, therefore, instruct for manslaughter. (4) Defendant's counsel have either not fully read, or have

misunderstood, the instruction which they designate as number 3; according to the decisions of this court it is unobjectionable. *State v. Talbott*, 73 Mo. 347; *State v. Thomas*, 78 Mo. 327; *State v. Dickson*, 78 Mo. 440; *State v. Tabor*, 95 Mo. 585. The instruction has also received the approval of this court over the same objection now urged by counsel. *State v. Anderson*, 98 Mo. 461. ( 5 ) The defendant stated on the way to the police station that jealousy and drink had caused him to kill his wife. *First.* Drunkenness is no excuse for the commission of crime. *State v. Snell*, 78 Mo. 240; *State v. Ramsey*, 82 Mo. 133; *State v. Sneed*, 88 Mo. 138; *State v. Lowe*, 93 Mo. 547. *Second.* He that kills his wife through jealousy, or from a belief in her infidelity, is guilty of murder in the first degree unless he detects her in the adulterous act. *State v. Anderson*, 98 Mo. 461; *State v. France*, 76 Mo. 681. *Third.* If defendant had made the statement, the giving of the instructions would have been harmless error; his defense was not based on jealousy or intoxication, and the instructions would have been simply legal abstractions, and, therefore, not prejudicial to the defendant. *State v. Snell*, 78 Mo. 240. ( 6 ) The charges of misconduct on the part of the circuit attorney, and of concealment of the truth by a juror, are not supported by affidavits, and consequently will not be considered by this court. *Loyd v. Railroad*, 53 Mo. 509; *State v. Morgan*, 1 Mo. App. 22; *State ex rel. v. Claudius*, 1 Mo. App. 562; *Cobb v. State*, 27 Ga. 648; *State v. Carter*, 98 Mo. 176; *State v. Hays*, 81 Mo. 574. This case should be affirmed on the authority of *State v. Jewell*, 90 Mo. 467.

THOMAS, J.—The defendant shot and killed his wife at number 405 South Second street in the city of St. Louis on the fourth day of February, 1889. In January, 1890, he was tried for this homicide in the criminal court of that city, and was found guilty of murder of the

first degree, and sentenced to death.  The case is now here by appeal.

The instructions of the court confined the jury to a conviction of murder of the first degree and an acquittal on the ground that the homicide was accidental. Defendant contends that the court ought to have authorized, by its instructions, a conviction of murder of the second degree and manslaughter of the fourth degree, and this contention raises the only question for our determination.  The instructions given, it is true, are criticised somewhat, but after a careful examination of them, we find they are couched in language that has been often approved by this court on the subject of murder of the first degree.

Did the court commit error in failing to instruct the jury in regard to a lower grade of homicide than murder of the first degree?  It is now the settled law in this state that it is the duty of the court to instruct the jury "upon all questions of law arising in the case," whether asked to do so or not.  *State v. Palmer*, 88 Mo. 568 ; *State v. Barham*, 82 Mo. 67.  Let us see if the evidence justified the contention that instructions for a lower grade of homicide ought to have been given.  The defendant and his stepson, Gus Kreitling, were the only eye witnesses of the tragedy.  The latter, who was a son of the deceased, testifies that defendant and deceased were "fussing" about one of the boarders, deceased saying that it was none of his business ; whereupon defendant retorted, "Shut up;" then defendant drew a revolver from his pocket and held it to her temple, whereupon witness ran between them and induced him to put the pistol away.  The defendant again said to deceased if she did not shut up he would blow her brains out.  The defendant again drew the pistol and held it to her head, whereupon witness again induced him to put it up.  Defendant again spoke to deceased, and a reply was made, when the defendant held the

pistol to her head and discharged it, the deceased falling to the floor. Witness saw defendant fire the pistol at her head.

On cross-examination witness says he came home about 9:15 and found defendant and deceased "fussing," which continued up to the time she was shot, deceased saying to defendant, "You would not shoot a fly."

"Q. Was that all she said? A. Well, she said a few words more, I don't remember them."

Defendant testified that deceased, he and others were celebrating her birthday. About 9:15 the boy, Kreitling, came in; about ten P. M. defendant went to the front door and heard two girls screaming and ran up Spruce street. He told Taylor, a boarder, he had better leave those girls alone, and if he could not quit using that language he could get another house. Taylor then left. Deceased then said to defendant: "What is the reason Taylor left?" Defendant replied: "I told him not to interfere with those girls. I do not want the police around my house, and to mind his own business." The boy, Gus Kreitling, went out. Then defendant went in the little room and got the keys and revolver from a bureau, and said, "Ida, let's go to bed." At that time defendant had in his right hand the pistol and two keys. He grabbed her around the shoulder and said: "Let's go to bed;" when the pistol went off she dropped down. He knelt and called her: "Ida, are you dead?" The boy then came in from the front and then ran out again; the second shot he did not remember. (The pistol would go off at half or full cock as was demonstrated to the jury by counsel.) Defendant stated to officer Mueller that it happened in fun; always got on well with his wife and never threatened to kill her.

"Q. At the time the revolver went off did you intend to shoot your wife? A. No, sir; I did not.

" *Q.*   How did it happen ?   *A.*   Accidentally."

The revolver was in the house six or seven months; was taken up stairs every night and brought down every morning; deceased used to bring it down, too ; the boy, Gus, frequently had the revolver and used it for blanks. The reason that he had the revolver was that boys used to come up and put out the lights in the house; the revolver was used to scare them; didn't know who loaded the pistol, thought the boy, Gus, did; the boy shot blank cartridges that same day in the kitchen; defendant never bought any cartridges, and did not know the pistol was loaded. "If I thought it was loaded I would not have handled it that uncarefully, you see."

It is manifest that the stepson makes out a case of murder of the first degree.   There is nothing in his testimony that shows the slightest circumstance that would mitigate the offense.   On the other hand it shows the killing to have been very deliberately done.   There was no contention before us in the argument that there was any just or lawful provocation which would reduce the homicide to a grade lower than murder of the first degree; the defendant not pretending that he shot his wife in a passion caused by any provocation whatever, either just or legal.   Therefore, the court did not err in instructing the jury that there was no testimony which disclosed any legal justification or provocation for the killing.   *State v. Landgraf*, 95 Mo. 97 ; *State v. Sneed*, 91 Mo. 557.

But it was contended with much ability and earnestness that defendant's testimony does make out a case of culpable negligence in the handling of the pistol that would make him guilty of manslaughter of the fourth degree.   This contention, however, is based upon the theory that the fatal shot was accidental.   In order to constitute manslaughter of the fourth degree in this case the killing must have been accidental and the

defendant must have been guilty of culpable negligence which caused the death.

The defendant says he had the keys and his pistol in his right hand, and put his left arm around his wife and asked her to go to bed, and thereupon the pistol fired and killed her. He gives us no particulars as to the way in which he held the pistol, or how it happened to go off. He says he got the pistol as usual to take it to his bedroom. There was no culpable negligence in his conduct as shown by himself, and for that reason the court could not have properly given the instruction, which it is now claimed ought to have been given.

The court gave an instruction, however, to the effect that the jury should acquit defendant if they found the shooting was accidental. The jury did not acquit defendant, but found him guilty of murder of the first degree, and in order to do this they must have found that the shooting was not accidental. If the shooting was not accidental, then defendant in this case was not guilty of manslaughter of the fourth degree, no matter how negligent he may have been in the handling of the pistol. On this point the argument of counsel proceeds upon the theory that the jurors might find that the pistol was fired intentionally rather than acquit defendant altogether, even though to so find would result in a conviction of murder of the first degree, whereas if they had been authorized to convict of manslaughter they would have found that the shooting was accidental. We cannot administer the law upon any such theory. The question of an accidental shooting was by the court squarely submitted to the jurors, and they negatived such shooting by their verdict. This finding of the fact by the jury is conclusive on defendant, there being ample evidence to warrant it. *State v. Turlington*, 102 Mo. 642.

We will add that there was no error committed by the circuit attorney in reading, in his argument to the

jury, the evidence furnished him by the official stenographer. It is admitted that the evidence he thus read was that given on the trial, and embraced in this record.

The defendant was too poor to hire counsel, but the court appointed two attorneys to defend him, and an examination of this record shows that no stone has been left unturned by them to save this unfortunate man's life. His case was ably put before the jury. The court committed no error and the verdict accords with the evidence.

Judgment affirmed. All of this division concur.